RUDOLPH S. BLOME CO. et al. v. HERD.*
(No. 8414.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 19, 1916. Rehearing Denied March 25, 1916.)

1. MUNICIPAL CORPORATIONS ☞568(3)—PAVING — SPECIAL ASSESSMENTS — EVIDENCE — FRAUD.

In an action against a property holder to collect a special assessment for paving, evidence as to the defective character of the paving and its failure to conform to the specifications, *held* sufficient to warrant an inference of fraud in the acceptance of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282; Dec. Dig. ☞ 568(3).]

2. MUNICIPAL CORPORATIONS ☞446 — PAVING—ACCEPTANCE—CONCLUSIVENESS.

An acceptance by the city of paving, where the character of the work and the departures from the specifications were such as to warrant an inference of fraud, or to show it to be substantially a different work from that contracted for, is not conclusive against the property owner.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1066, 1067; Dec. Dig. ☞446.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

**3.** MUNICIPAL CORPORATIONS ☞500 — SPECIAL ASSESSMENTS — PLEADING—DEFECTS—CURE BY EVIDENCE.

A petition alleging that special assessments for paving were void as to a property owner, because it was not laid in conformity with the specifications and was accepted by the city commission without due regard to the rights of the property owner, will be construed to aver fraud in the acceptance of the work, where evidence from which fraud could be inferred was admitted without objection on the ground that it was not authorized by the pleadings.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1172; Dec. Dig. ☞500.]

**4.** MUNICIPAL CORPORATIONS ☞513(1), 562(1)—STREET PAVING—NECESSITY—RIGHT TO QUESTION.

Where a property owner appeared before the city commission as authorized by Loc. & Sp. Acts 31st Leg. c. 31, subc. 12, § 8, and objected to a proposed street paving on the ground that it was unnecessary and would not specially benefit his property, and thereafter commenced, within the time limited by section 10 of that act, a suit to contest such assessment, the city cannot, by proceeding with the work and accepting it and then bringing an action to collect the special assessment, which by agreement was consolidated with the pending suit, deprive the property owner of his right to question the necessity and benefit of the paving.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1188, 1189, 1196, 1201, 1269; Dec. Dig. ☞513(1), 562(1).]

**5.** MUNICIPAL CORPORATIONS ☞568(2)—SPECIAL ASSESSMENTS—ACTIONS—ADMISSIBILITY OF EVIDENCE.

Where, in an action to collect special assessments against a property owner who had objected to the paving and brought suit to contest the necessity and benefits thereof, the city offered evidence that the improvement as completed was in accordance with the specifications, and that thereby defendant's property was benefited, the defendant in answer thereto could show not only that the improvement as contemplated did not benefit his property, but also that the paving as actually laid was not a benefit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282; Dec. Dig. ☞568(2).]

**6.** MUNICIPAL CORPORATIONS ☞321(2)—PAVING—NECESSITY—DETERMINATION—CONCLUSIVENESS.

Loc. & Sp. Acts 31st Leg. c. 31, subc. 12, § 5, provides that the commissioners shall have power to order the making of public improvements by resolution which shall be conclusive of the public necessity and benefit. Section 8 provides for a hearing of objections by the property owner, who shall be entitled to a full and fair hearing as to all matters affecting the assessment of personal liability or the benefits of said improvement to the property, and any objection to the assessment or the making of such improvement, or any invalidity or irregularity in the proceedings. Section 10 provides for a suit in the district court by a property owner whose objections were overruled, in which the contest shall be upon any ground affecting the validity of the assessment of personal liability or affecting any proceeding had with reference thereto. *Held* that, even if the determination by the commission that the work is necessary is conclusive as to the public necessity of the improvement in proceedings to prevent the payment therefor by general tax, it is not conclusive that it is necessary or would especially benefit the property of a particular owner, who is objecting to it on those grounds under the provisions of the act.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 838; Dec. Dig. ☞321(2).]

**7.** CONSTITUTIONAL LAW ☞290(1)—EMINENT DOMAIN ☞2(1)—MUNICIPAL CORPORATIONS ☞408(1)—SPECIAL ASSESSMENT—DUE PROCESS OF LAW—"TAKING PROPERTY WITHOUT COMPENSATION."

Loc. & Sp. Acts 31st Leg. c. 31, subc. 12, § 7, providing that no part of the costs of street improvement shall be assessed against any property owner in excess of the proposed benefits thereto in enhanced value arising from the improvement, is but the declaration of existing law, since to require a property owner to pay special assessments for public improvements in excess of the special benefits to his property is taking his property without due process of law, contrary to Const. § 19, and Const. U. S. Amend. 14, § 1, and a taking for public use without just compensation, contrary to Const. § 17.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871, 874, 875; Dec. Dig. ☞290(1); Eminent Domain, Cent. Dig. §§ 3–8; Dec. Dig. ☞2(1); Municipal Corporations, Cent. Dig. §§ 1005, 1183; Dec. Dig. ☞408(1).

For other definitions, see Words and Phrases, First and Second Series, Taking.]

**8.** MUNICIPAL CORPORATIONS ☞568(3)—PAVING — SPECIAL ASSESSMENTS — EVIDENCE — BENEFITS—NECESSITY.

A finding by the trial court that no special benefit resulted to the property of an owner against whom assessments for paving were levied, and that the paving was unnecessary, *held* to be supported by substantial evidence so as not to be reviewable on appeal.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282; Dec. Dig. ☞568(3).]

**9.** APPEAL AND ERROR ☞931(1)—REVIEW—FINDINGS BY TRIAL COURT—EVIDENCE CONSIDERED.

In testing the sufficiency of the evidence to sustain the trial court's findings, the evidence most favorable to appellee is to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3762; Dec. Dig. ☞931(1).]

**10.** APPEAL AND ERROR ☞1011(1)—REVIEW—FINDINGS—SUFFICIENCY OF EVIDENCE.

Conflicts of evidence are to be determined by the court below, and, if the finding is supported by any credible evidence of legal sufficiency, the appellate court must approve.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ☞1011(1).]

Appeal from District Court, Tarrant County.

Actions by H. B. Herd against Rudolph S. Blome Company and another to review an assessment of benefits for street paving, and by Rudolph S. Blome Company and another against H. B. Herd to recover special assessments levied for the paving, were consolidated for trial. Judgment rendered for H. B. Herd, and the other parties appeal. Affirmed.

Bradley & Burns and Spoonts, Ratcliff & Christian, all of Ft. Worth, for appellants. Wade & Smith and Robt. G. Johnson, all of Ft. Worth, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CONNER, C. J. We think we can perhaps best present this case in a historical manner and in a chronological order. So endeavoring to do, it appears that the city of Ft. Worth is a municipal corporation acting under a special charter granted to it by the Legislature of the state of Texas by act approved March 10, 1909. See Loc. & Sp. Laws, 1909, p. 227 et seq. In chapter 12 of that act, relating to pavement of streets and thoroughfares it is provided, among other things (section 3), that the board of commissioners of the city "shall have power to order the improvement of any highway or highways, or part thereof, in the city and to prescribe the nature and extent of the improvements."

In the next section (section 4) it is provided that:

"Subject to the terms hereof, the cost of such improvements may be paid wholly by the city or partly by the city and partly by owners of property abutting on such improvements and benefited thereby. * * *"

In the next section (section 5) it is declared that:

"The board of commissioners shall have power by resolution to order the making of such public improvements, or any of them, by majority vote, without notice, and the passage of such resolution shall be conclusive of the public necessity and benefits thereof. The resolution shall generally set out the nature and extent of the improvements to be made, the section or sections of the highway or highways to be improved, and the material or materials to be used, and the method or methods of paying the cost. The resolution may specify different or alternative materials, and different or alternative methods for the construction of the improvement, and the payment of its cost. Upon passage of such resolution, the city engineer shall forthwith prepare specifications subject to approval of the board of commissioners, for the improvement, embracing the different or alternative materials or methods which may be prescribed by said resolution, for the construction of said improvement or payment of its costs; and the character of bond or bonds, if any, required of the successful bidder. Such specifications shall be submitted to the board of commissioners and after being corrected, in event correction is necessary and same is satisfactory to said board, same shall be approved by said board. Said board shall have power to require of the contractor to whom the work may be let, a bond or bonds for the faithful performance of the contract, and for the repair or reconstruction, in whole or in part, of the improvement. * * * When the specifications have been adopted by said board, the city secretary or other officer designated by the board shall advertise for sealed bids for the construction of said improvements in accordance with the specifications. * * * Bids shall be filed with the board of commissioners and opened and read in open meeting thereof. Said board may accept such bid or bids as it may deem most beneficial to the city and the owners of the property abutting the proposed improvement, or may reject any and all bids and may accept different bids for parts of the improvement and accept such bid or bids on different plans or methods, or for different materials, as it may deem best. No bid shall be amended, revised or changed after being filed."

Section 6 of the chapter provides that:

"The bids having been accepted by the board of commissioners, the city shall enter into contract with the contractor to whom the work is let, for its performance," etc.

Section 7 then declares that:

"Exclusive of the cost of such improvement to be paid by railroads and street railroads as herein provided, the city, acting by said board of commissioners, shall have the power to assess the whole cost of constructing and reconstructing sidewalks and curbs and other improvements against the owners of property abutting on the highway or highways, or sections thereof, to be improved, who are specially benefited thereby. But no part of such cost shall be assessed against any owner, or his property, in excess of the special benefits thereto in enhanced value thereof arising from the improvement, nor until after the notice and hearing hereinafter provided for," etc.

Section 8 then declares that:

"When the contract or contracts for improvements have been executed and approved, if any part of the costs is to be assessed against property or its owner or owners, the city engineer shall at once prepare a statement containing the names of persons, firms or corporations or estates owning property abutting on the highway, or section thereof to be improved, and the number of front feet owned by each with such description by lot or block number or otherwise, sufficiently to identify the same, and also containing an estimate of the total cost of the proposed improvement, the cost per front foot of abutting property, and the total cost proposed to be assessed against such owner and his property. Said statement shall be examined by the board of commissioners and any errors therein corrected, but no error or omission shall invalidate any assessment made thereunder. When said statement has been approved by said board, it shall then determine and declare the necessity of assessing any part of the cost of proposed improvements against such owners and their property, by resolution directing notice to be given to such owners and fixing the time and place of a hearing to be given them. Such notice shall be signed by the city secretary or other officer designated by the board, and shall state the time and place of hearing, the general nature of improvement proposed, the highway or section thereof to be improved, and the total amount and amount per foot proposed to be assessed against each owner and his property."

The section then provides the method of serving the notice specified and further declares that:

"On the day fixed for said hearing or any time thereafter before any assessment is made, any person, firm, corporation or estate owning or having any interest in any property proposed to be assessed for any part of the cost of such improvement, or against whom any person(al) charge is proposed shall have the right to appear before said board of commissioners, in person or by attorney or agent, and shall be entitled to a full and fair hearing as to all matters affecting said assessment or personal liability, or the benefits of said improvement, if any, to property proposed to be assessed and any objection to such assessment or to the making of such improvement, or any invalidity or irregularity in the proceedings with reference thereto, or any other objection. All objections shall be filed in writing, and thereafter the board of commissioners shall hear and determine the same, and opportunity shall be given to persons filing objections to subpœna witnesses and produce testimony. Said hearing may be adjourned from time to time till completed without further notice. The said board shall have the power to inquire into and determine all facts necessary to the adjudication of objections and the ascertainment of special benefits to such owners by means of such improvements, and shall render such judgment in each case as shall be just and proper."

It is further provided (section 9):

"When said hearing has been concluded the board of commissioners shall, by ordinance, which shall take effect from its passage, without publication or other prerequisites, assess against the several owners of property, and their property abutting on the highway or section thereof ordered to be improved, such part of the cost of improvement as said board may have adjudged against them. Said ordinance shall fix a lien upon said property and declare the respective owners thereof to be personally liable for the amounts assessed against them, and shall state the time and terms of payment of such amounts. * * * The cost of such improvement assessed against any property or its owner, together with the interest and costs of collection and reasonable attorney's fees, when incurred shall constitute a personal claim against such property owner, and be secured by lien on such property, superior to all other liens, claims or titles, except lawful taxes and such liability and lien may be enforced in any court having jurisdiction, or by sale of such property by the officer, and in any manner as far as applicable, as sales are authorized to be made for nonpayment of city taxes," etc.

It is then provided (section 10):

"Any person interested in any property assessed for such improvements, or against whom any charge of personal liability may have been fixed, may within ten days from the conclusion of the hearing above referred to, but not thereafter, institute his suit in any court having jurisdiction for the purpose on any ground, the validity of said assessment or personal liability, and the validity of any proceeding had with reference thereto; but if said action be not brought within said period of ten days, then said persons, their heirs, successors, assigns, or personal representatives, shall be forever barred from asserting any defect in such proceedings, or any invalidity in said assessment or charge of personal liability, in any action in which the same may thereafter be brought into question.

"The said city and the contractor to whom the work of improvement may have been let shall be made party defendant to any suit brought under this section. When any suit has been brought under the terms of this section, the performance of any work may be suspended at the election of the city or the contractor, until said suit is finally determined, provided, that any suit of error or appeal from the judgment of the court in which said suit was brought shall be perfected within thirty days from the adjournment of the term of the court of original jurisdiction at which final judgment shall thereafter be taken or sued out," etc.

The chapter referred to further provides that improvements, such as provided for in the sections from which we have quoted, may also be ordered upon the petition of the owners of 60 per cent. of the front feet abutting upon the street proposed to be paved; and, further, that the board of commissioners may authorize the issuance by the city of assignable certificates against abutting property owners, or against persons, firms, or corporations using or occupying the highways, such certificates to be made payable to the contractors, etc.

Under the foregoing provisions of the city charter, the record discloses that on April 9, 1912, a petition of the required number of property owners on East Third street in the city of Ft. Worth (not including appellee Herd's name, however) was presented to the city commission to have that street paved. The petition was granted, the street ordered paved, and a contract entered into, upon specifications to be hereinafter referred to, with the appellant Rudolph S. Blome Company. Appellee, H. B. Herd, owned 100 feet fronting upon the section of the street so ordered to be improved, and the commission assessed against him a personal liability of $456.29, as his proper proportion under the ordinances of the costs of the improvement, and declared a lien upon his property to secure the payment.

Prior to the assessment, however, the commission had given notice of the proposed improvement, as provided for in section 8, c. 31, subc. 12, which we have above quoted in part, and H. B. Herd in answer thereto had appeared before the commission, objecting to the improvement among other things insisting that the improvement was wholly unnecessary, and that thereby his property would in no wise receive special benefit. The objections, however, were overruled and the assessment made as stated. Whereupon, within the time specified in the ordinances, appellee, Herd, filed his suit, making the Rudolph S. Blome Company and the city of Ft. Worth parties defendant, in the district court, again urging the objections made by him before the city commission. Notwithstanding the institution of this suit, however, the contractors proceeded and improved the street in purported compliance with the specifications provided for in the contract of the city, and the work when completed received the approval of the city engineer. Whereupon, H. B. Herd having refused to pay the assessment against him, the city, for the benefit of the Rudolph S. Blome Company, which also joined in the suit, instituted suit in the district court of Tarrant county against H. B. Herd to recover the amount declared to be due from him by reason of the improvement of the street, and to enforce the lien declared in the ordinances of improvement. It further appears that later the two suits, to wit, the one instituted by H. B. Herd as above stated and the one last referred to, were consolidated. In the consolidated suit a trial was had upon amended pleadings by all parties, and resulted in a judgment for H. B. Herd, and Rudolph S. Blome Company and the city of Ft. Worth have appealed.

The trial court filed his conclusions of fact and law, and therefrom it appears, in addition to facts hereinbefore recited, that the improvement contract between the city and Rudolph S. Blome Company required that the street to be improved should "be thoroughly graded, filled, and rolled, in accordance with the lines given by the city engineer, and paved with concrete base of 5½ inches, and of granitoid cap or wearing surface of 1½ inches, all to be put down in good and workmanlike manner." In this respect the court found "that the paving as put down on said street by Rudolph S. Blome Company was

not in accordance with the plans and specifications and contract therefor; that said concrete base is in many places not over 3½ inches thick, and nowhere is shown to be over 5 inches thick; that the cap or wearing surface of said paving is about ½ inch thick; that there is not sufficient bond tying said cap or wearing surface to the concrete base; that the concrete base is composed of material that is exceedingly brittle and friable, and samples thereof presented in court taken from various places can be readily crumbled in the hand; that paving of said street was not constructed by said Rudolph S. Blome Company in a good and workmanlike manner." The court further found from the evidence "that no special benefit to the said H. B. Herd from said paving in enhanced value of his property accrued to him by reason of said paving, and that his said property was not enhanced in value by said paving; that before said paving was made that said street was a good street in all weather, and that repaving of the same under the circumstances was unnecessary."

[1] Error is first assigned to the action of the court in overruling a demurrer to subsection "h" of the eleventh paragraph of appellee's amended petition, which was worded as follows:

"Plaintiff further says that said orders and ordinances are void as to him and his property because such paving, as actually done, is not in accordance with the specifications in said contract in this, to wit, the specifications called for paving to the depth of seven inches, and in no place does the said pavement exceed seven inches, while in many places it is less than seven inches, making the general average much less than seven inches; that said paving consists of bituminous blocks on a concrete base, and said blocks are not properly tied or bound together, and said concrete base is of an extremely poor quality. Said paving as actually put down is not worth over 50% of what it would have been worth had the specifications been complied with. Plaintiff has reason to believe and does believe that the said city accepted such job as completed, and, if so, said city commission acted injudiciously and without due regard to the rights of the property owners on said street, including this plaintiff, against whom the cost of said paving was to be charged."

It is insisted that inasmuch as, from the allegations made, it appears that the city accepted the work done by Rudolph S. Blome Company through its authorized officers, that such acceptance is conclusive, in the absence of an allegation of fraud or collusion in the acceptance. In now passing upon the ruling of the trial court presented in the assignment, we wish first to note that appellants' contention is made contingent on the assumption that the plea fails to embody a charge of fraud; and that under the circumstances now to be stated that we will give to the plea a wider reach or scope than is, perhaps, to be plainly defined by the terms of the plea, for later evidence in support of the plea was admitted and heard by the court and evidently considered by him, and, while the evidence was objected to on the ground that the approval of the work by the city engineer was conclusive, no objection was urged because of an insufficiency of the plea to authorize its admission, and this evidence, in our judgment, goes beyond a good-faith approval of the work by the city engineer. Reading some of the evidence, which, as appears from the court's findings, was evidently credited by the trial court, we fail to see how the work could have been approved without marked incompetency, inexcusable negligence, or downright fraud on the part of the city authorities whose duty it was, under the contract with Rudolph S. Blome Company, to supervise and approve the work. It certainly met the measure of the allegation that it was "without due regard to the rights of the property owners on said street, including the plaintiff."

Mr. Hawes testified on the subject:

"I saw the street and am acquainted with it for the whole length. I saw cuttings in the street at different places. There was a man there repairing it. I took down the gentleman who is building the county roads here. We measured the thickness of the pavement at several places. Measurements we took were about 3¼ to 3½ inches. The thickest place we found was 3½ inches. When I say 3½, that means the concrete and the cap together. We took samples from practically every block down there. I have some of those samples that I took with me. (Witness here exhibits samples to the court.) The material that I have here is part of the paving, both top and inside. I could take my finger and dig out the stuff. The reason is that it was not properly put down. I dug most of that out with my fingers. I did not find any more that was much harder than this. * * * We tried to get average samples of the pavement; there is some that is worse than these samples and some of them so fine that we had no way to bring it up. We had to have something to hold it; it was nothing but sand packed down 2½ inches, and you could pick it up with your hand. The granitoid cap was one-half inch deep. This that I have here is one-quarter inch thick. I have not put any chemicals or anything of the kind on this. I can find worse samples than this down there. At not a single place did we find any concrete under this cap 5½ inches thick. This sample is soft. Before the pavement was laid, East Third street opposite Mr. Herd's property was a very good graveled street."

On examination by the court:

"I have brought into court a quantity of this stuff collected at different points on that street. In the presence of the court I have taken up pieces of the paving and broken and crumbled it to pieces with my hand. It is an exceedingly soft material. In my opinion, the average paving on that street is really worse than these samples. By picking these pieces up in your hands and pressing upon them with your hands you can break them apart and crush them. That would not be sufficient in strength to stand pressure, automobiles or wagons and vehicles."

There was other testimony of like tendency which, if credited by the court, as was evidently done, as we have already stated would authorize an inference of fraud, and we know of no decision that goes so far as to hold that a citizen against whom a personal obligation has been imposed for paving, and to secure which a lien has been

declared upon his property, is helpless under circumstances of the kind stated.

[2] For the purpose of the present discussion, it may be conceded that a city engineer's act in approving an improvement of the character under consideration, when done in good faith and with due regard to the rights of the abutting owners, will be conclusive as against all attacks dependent upon matters of judgment and honest differences of opinion as to the character of the work; but it ought not to be so held, we think, where the departures from specifications are so great as to amount to an inference of fraud, or to constitute the work done substantially a different work from that contracted for.

[3] Inasmuch, therefore, as there was no objection to the evidence on the ground that the allegations of the plea were not broad enough to authorize its admission, we will now construe the plea as sufficiently broad in its terms to include the proof offered, and, so construed, it is broad enough to amount to an averment of a fraudulent approval of the work. Such construction is not out of harmony with well-considered authority on the subject.

Mr. Townes, in speaking of the construction of a pleading after verdict, says:

"It is difficult to state accurately the result of these decisions. It is clear that the rules applied in testing the sufficiency of the pleading when the point is raised for the first time after verdict are more liberal even than in considering a general demurrer, for in the last case it is said that the demurrer if seasonably interposed should have been sustained. So all such intendments as can be invoked in such cases apply here. The difficulty arises when we undertake to determine how much more liberality shall be extended. Clearly the objection of argumentativeness is cured by the verdict, as the process by which the petition in the last-cited case was sustained is just the one prohibited by the ruling on that subject. Perhaps it may be correct to say that a verdict will cure all objections to a pleading which are based on matters of form, and all those based on matters of substance which do not involve the entire absence of some essential allegation; that any indirect method of allegation, or any statement, however general, which by any reasonable though liberal construction can be made to include the alleged omission, will be held to do so, and cure the defect, unless it has been called to the attention of the court by an unwaived exception to the pleading or by objection to the testimony." Townes' Tex. Pl., 2d Ed. page 404.

If right, therefore, in the indicated construction of the plea, it must be held sufficient as against the objection urged, even though there is no distinct allegation of fraud; for if the facts proved can, by any reasonable liberality of construction, be brought within the general terms of the plea, and if such facts amount to a fraud, the plea will be sufficient without the distinct imputation. State v. Wichita Land & Cattle Co., 73 Tex. 450, 11 S. W. 488; Mussina v. Goldthwaite, 34 Tex. 126, 7 Am. Rep. 281; Carter v. Carter, 5 Tex. 93; Storer v. Lane, 1 Tex. Civ. App. 250, 20 S. W. 852. Appel-

lants' first assignment will be accordingly overruled.

Appellants present a number of other assignments urging objections to the testimony of Hawes and others, to which we have already adverted. The principal objection presented in these assignments, to wit, that the action of the city engineer in approving the work is conclusive, we think is sufficiently disposed of by what we have already said and by what follows in discussing the rights of contest conferred upon appellee by the city charter.

[4] There are, however, the further objections that this testimony was irrelevent and immaterial. It is to be remembered that this controversy does not assume the form of a mere resistance on the part of a property owner in a suit upon an assessment made against him for an improvement of the street. This is a case where the owner of property abutting upon the street sought to be improved, under ordinances authorizing him so to do, appears before the city commission protesting and urging that the contemplated improvement is wholly unnecessary and will be without special benefit to his property, and where, after a denial of these objections on the part of the city commission, and by virtue of ordinances specifically giving him that right, he continues the contest in a district court with full right given to him to there urge the objections adversely determined by the city commission, and we do not think that under such circumstances the city and the contractor can deprive the property owner of his right to have his objections and rights determined in the judicial tribunal by proceeding with the improvement, notwithstanding the property owner's objections, cause the work done to be approved by the city engineer, and thereafter prosecute an action against him, as here done, to recover the amount of the improvement assessment.

[5] It is also to be remembered, in answering the objections of irrelevancy and immateriality, that the all-important question of whether appellee's property was benefited by the improvement under consideration was also distinctly presented. Before the city commission it assumed the form of a protest that the improvement as contemplated would not benefit his property. Later, in the district court, after the consolidation of the suit and in the amended petition, it was again specifically charged that the "attempted assessment and charge of personal liability against him is void because no special benefit from said paving in enhanced value of his property will arise to him from said proposed improvement." Appellants offered evidence tending to support their contentions that the improvement as completed was in accordance with the specifications, and that thereby appellee's property was benefited, and we see no reason to doubt the view the trial court evidently entertained that, in answer to these

contentions, appellee might show, not only that as originally contemplated the appellee's property would not be specially benefited, but that as actually completed it was not so.

[6] In McQuillin's Municipal Corporations, vol. 5, § 2046, it is said, with citation of cases, that:

"Should property be not in fact benefited by an improvement from which the property derives all of the benefit of the kind necessary to its use and enjoyment, usually it is not subject to assessment for the later improvement. For example, where a corner lot receives adequate water supply from pipes laid in one adjoining street, it cannot be assessed for the laying of pipes in the other adjoining streets, from which it would receive no benefits. So, under a charter providing that those whose premises connect with a common sewer, or who receive benefit thereby for draining their premises, shall each be assessed his just share towards the expense of laying or constructing such sewer, a landowner who has been assessed for the construction of such a sewer cannot be assessed for the expense of changes therein made necessary by the fact that a new sewer is to be connected with it."

It may be true, as under another assignment appellants contend, that the board of commissioners, as specified in section 5 of the ordinance from which we have quoted, "shall have power by resolution to order the making of such public improvements, or any of them, * * * and the passage of such resolution shall be conclusive of the public necessity and benefit thereof"; but the right of the city under its charter to determine "the public necessity" of a public improvement, and to pay therefor out of its general revenues, is one question. and the power of the city to invade the rights of an abutting landowner by assessing against him a personal liability and fixing upon his property a lien to secure its payment is altogether a different question. It might well be held that in a suit by a taxpayer to resist the levy of a general tax for the payment of public improvements to be paid for by the city out of its general revenues, or out of some special fund appropriated for the purpose, that the taxpayer could not question the public necessity of the work, but a consideration of the charter as a whole, as it seems to us, very clearly shows the purpose of the legislature, that when the city shall undertake to make personal assessments and create liens, the citizen against whom such liabilities are asserted has the right to question the proceedings in whole or in part. The language of the charter is (section 8) that he "shall be entitled to a full and fair hearing as to all matters affecting said assessment of personal liability, or the benefits of said improvement, if any, to property proposed to be assessed, and any objection to such assessment, or to the making of such improvement, or any invalidity or irregularity in the proceedings, with reference thereto, or any other objection." These objections may be urged in the first instance before the commission, and his right to later urge the same objection in a trial before the district court is given by language equally as broad. The language having specific reference to the trial in the district court (section 10) provides, in effect, that the contest there shall be upon "any ground" affecting the validity of the assessment of personal liability or affecting "any proceeding had with reference thereto."

[7] A further ground of support for the judgment below which, as it seems to us, is conclusive is the court's finding that the improvement was unnecessary and that appellee's property received no special benefit from the improvement under consideration. The city charter itself specifically provides (section 7) that "no part of such costs (the costs of improvement) shall be assessed against any owner of property in excess of the proposed benefits thereto in enhanced value thereof arising from the improvement," etc. This is but a specific declaration of a doctrine firmly established by our Supreme Court in Hutchenson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884, following a decision of the United States Supreme Court in the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. In the Storrie Case our Supreme Court quoted sections 17 and 19 of the Constitution of this state and section 1 of the Fourteenth Amendment to the Constitution of the United States.

Section 17 of the state Constitution reads:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person. * * *"

Section 19:

"No citizen of this state shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Section 1 of the Fourteenth Amendment of the Constitution of the United States reads:

"Nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

After making these quotations and referring to the case of Norwood v. Baker, above mentioned, the court says:

"Norwood v. Baker established the following propositions which are applicable to the case at bar:

"1. The Legislature of a state cannot authorize a municipal corporation to assess upon abutting property the cost of a public improvement in a sum materially exceeding the special benefits which that property may derive from the work. The court said: 'In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking under the guise of taxation of private property for public use without compensation.' It has been uniformly held that such assessments rest upon the grounds that the benefits conferred are equal to the demands made upon the property, but the courts, in applying the law to the particular cases, have heretofore ignored the principle upon which the authority rests, and have held that the exercise of the power will be upheld, although the facts out of which it arises do not exist, and

that benefits will be presumed to equal the assessment.

"2. The Legislature of a state cannot confer upon a municipal corporation the authority to make such assessment conclusive upon the owner without giving an opportunity to contest the question of benefits. Upon that point the court said: 'As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the Legislature upon particular private property of the entire cost of public improvement, irrespective of any peculiar benefit accruing to the owner from such improvement, could not be questioned by him in the courts of the country. It is one thing for the Legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received.' If the law under which the assessment in controversy in this suit was made did not afford to the property owner a fair opportunity to contest the correctness of the assessment made upon her property, she was not estopped to deny its validity."

We think, then, that it must be held that appellee had the undoubted right to raise, as he did, both before the commissioners and in the district court, the issues of a want of a necessity for the repaving and of any special benefit to his property by the improvement under consideration. This he did, and, as already stated, the issues were determined in his favor by a specific finding of the court, which in the interest of clearness and to preserve the continuity of our thought will be here again quoted, viz.:

"The court finds from the evidence that no special benefit to the said H. B. Herd from said paving in enhanced value of his property accrued to him by reason of said paving, and that his said property was not enhanced in value by said paving; that before said paving was made that said street was a good street in all weather and that repaving of the same under the circumstances was unnecessary."

[8] It cannot be said that appellants' attack upon this finding must be sustained. Indeed, the finding that the repaving was "unnecessary" is not questioned. The assignment is that the court's finding "is not supported by the evidence and is contrary to the great weight and preponderance of the evidence, in that the great weight and preponderance of the evidence in this cause was to the effect that the value of plaintiff's said property was enhanced by said paving at least to the amount of said assessment."

The evidence adduced by appellants in their statement under this assignment is as follows:

"L. D. Hawes testified that he had lived in Ft. Worth about twenty years. His business was that of a lumber dealer. He had bought and sold quite a good deal of real estate in Ft. Worth in the last five or six years. He thought that he was acquainted with the market value of the property on East Third street at the corner of Commerce belonging to H. B. Herd, in 1912. He would think that the market value of that property in 1912 prior to the paving was in the neighborhood of twenty or twenty-five thousand dollars. He did not think that it was worth any more immediately following the putting down of the pavement.

"T. B. Gilliland, witness for appellee, testified that he had been in the real estate business in Ft. Worth about fourteen years. That Mr. Herd's property on East Third street in 1912, immediately before the paving was put down, had a market value of $20,000 or more, possibly as high as $25,000. Immediately after the paving was put down the market value of the property was not enhanced at all. On cross-examination Mr. Gilliland said that he did not mean to say that financial conditions have not had a good deal to do with making the property stand still; that ordinarily he would say the financial situation we have confronted for some time has had a great deal to do with it. When asked whether in normal times he thought that paving would enhance the value of said property, he replied that he would answer that question by expressing his views about that pavement.

"Appellants introduced witnesses N. M. Pressley, W. H. Greenwood, W. C. Blackman, C. T. Vivion, and J. W. Heffington, all of whom testified to having had experience of several years in the real estate business in Ft. Worth and being acquainted with real estate values in said city. All of them testified that the value of said property had been enhanced by said paving in amounts variously estimated from the value of the paving to $5,000."

[9] The well-established rule on this subject in this state is that, in testing the sufficiency of the evidence to sustain the trial court's findings, the evidence most favorable to the appellee is to be considered.

[10] Mere conflicts of evidence are to be determined under the statutes by the court or jury below, and if on appeal the verdict or finding is supported by any credible evidence of legal sufficiency to sustain the finding, the appellate court must approve.

A specific statement of the rule is that:

"We must reject all evidence favorable to the plaintiffs in error, and consider only the facts and circumstances which tend to sustain the verdict; and if the jury, in an honest and impartial effort to arrive at the truth, might have reached the conclusion embodied in this verdict, this court cannot set it aside." Cartwright v. Canode (Sup.) 171 S. W. 696; F. & M. Gin Co. v. Simmons, 178 S. W. 622.

In the light of the rule, as it seems to us, appellants' own presentation of the question demonstrates that it is our duty to support the court's finding, which in our opinion requires an affirmance of the judgment below.

Other questions are presented, but they are thought to be immaterial, or sufficiently answered by what we have already said. All assignments are accordingly overruled and the judgment is affirmed.

Affirmed.

DUNKLIN, J., disqualified and not sitting.