**SOUTHWEST INV. CO. et al. v. PARTIN et ux.**

**No. 2754.**

Court of Civil Appeals of Texas. Beaumont.

May 31, 1935.

Rehearing Denied June 12, 1935.

Edgar Monteith, of Houston, and W. T. Davis and Ramsey & Ramsey, all of San Augustine (Julian L. Shapiro, of Houston, of counsel), for appellants.

Bogard & Anderson, of San Augustine (John R. Anderson, of Center, of counsel), for appellees.

O'QUINN, Justice.

This suit grew out of a certain paving contract and the issuance of certain paving certificates by virtue of said contract relative to paving certain streets in the city of San Augustine, Tex.

The city of San Augustine let a contract to Brown & Root to pave, among others, certain portions of Columbia street and Main street in said city in accordance with specifications furnished by the city. Appellees, W. R. Partin and his wife, owned lots 134, 135, and 136 in block 18 fronting 200 feet on the south side of Columbia street, and lots 185, 186, 187, and 188 in block 18 fronting 320 feet on the north side of Main street, in said city, which were included in the paving there-in provided for in the contract. Before the paving was begun, appellees, Partin and wife, executed mechanics' liens on said lots for the purpose of better securing the payment of the certificates authorized to be issued by the city to the contractors for the paving when completed and accepted by the city. In the mechanics' liens executed by appellees it was provided that appellees convey the lots mentioned to Edgar Monteith in trust with power of sale for the benefit of said contractors or their assigns in the event appellees failed to make payment for the paving. The paving was done by the contractors and accepted by the city. Appellees did not pay the first ———— installments falling due for the paving in front of their property, and the contractors having assigned their certificates to appellant Southwest Investment Company, it elected to mature all of the installments evidenced by the certificates, and the trustee, Edgar Monteith, advertised the property for sale in accordance with the power of sale in the deed of trust in connection with the mechanics' liens executed by appellees. This suit was brought by appellees to enjoin the sale and to cancel the mechanics' liens and deed of trust and paving certificates against their property, and to remove cloud from their title to the lots. Temporary injunction was issued pending the trial of the case. As grounds for the injunction, and the relief sought, appellees alleged:

(a) That the execution of the mechanics' liens and the deed of trust, with power of sale by them to better and further secure the payment of the paving certificates to be issued against their property by virtue of the paving contract, was obtained by fraud, in that the contractors represented and caused to be represented to them that said contractors were to and would, under the paving contract, execute a good and sufficient bond to care for and properly maintain the paving for a period of five years after its completion and acceptance by the city, when in fact no such undertaking was had and no such bond was ever executed and delivered for said purpose or for any purpose; that they believed and relied upon such representations, and but for same would not have executed the said liens and deed of trust.

(b) That the consideration for the certificates sought to be enforced and col-

lected had wholly failed because Brown & Root, the contractors, had neither performed nor substantially performed their contract with the city in constructing the improvements, in that same was not done nor substantially done in accordance with the plans and specifications provided and required in the contract with the city, pleading the manner and instances in which they failed to comply with the contract.

(c) That the city council had exceeded their authority when they accepted the paving for in that said paving was not done in compliance nor substantial compliance with the plans and specifications provided in the ordinance authorizing the paving, nor with the contract under which the paving was done, fully setting out the particulars in which the requirements were ignored.

(d) That the city council did not act in good faith and with due regard for the rights of property owners of which appellees were a part, in accepting the paving work, as done, because said work was not done in compliance with, nor substantial compliance with, the plans, specifications, and requirements of the ordinance authorizing the paving and the contract under which same was done, fully specifying the delinquencies and departures from the specifications called for in the ordinance and the contract.

Appellants, Southwest Investment Company and Edgar Monteith, answered by general demurrer, general denial, and by cross-action alleged that they had substantially complied with the contract in constructing the paving, had used the material furnished by the city, and that the defects in the streets were due to the inherent unsuitability of the material furnished for the construction of the paving; that no fraud was practiced in procuring the execution of the mechanics' liens by appellees. By their cross-action appellants sought judgment on their certificates and foreclosure of the mechanics' liens.

By supplemental petition appellees answered the cross-action against them, and alleged that if the city furnished any material for the construction of the paving that was not called for by the contract, that it exceeded its authority and in so doing perpetrated a fraud upon them; that they had matured all the installments sued for more than two years prior to the filing of the cross-action, and hence the action, if any they had, was in all things barred by the two years' statute of limitation; and that after notice of hearing was given by the city and after the hearing had been had, the plans and specifications upon which the original hearing was had, were changed by the city without conforming to legal requirements, and the assessments against appellees' property was increased, wherefore same was not in compliance with law, and a fraud upon them.

The case was tried to a jury upon special issues, in answer to which they found:

(1) That McRae Thomason, acting as agent of Brown & Root, the contractors, represented to W. R. Partin, appellee, that said contractors, Brown & Root, "had given a five year maintenance bond on the street improvement work proposed to be done."

(2) That W. R. Partin believed and relied upon said representations, and but for his belief in the truth of same would not have executed the mechanics' lien contracts to secure the payment of the cost of paving fronting his lands.

(3) That the contractors, Brown & Root, in the manner they constructed the paving, failed to substantially perform their contract with the city according to the plans and specifications made part of the contract.

(4) That the city council exceeded their authority in accepting the paving work, as done.

(5) That the city council failed to act in good faith and with due regard to the rights of property owners in accepting the paving work as done.

Upon the verdict of the jury, judgment was rendered for appellees granting them all the relief prayed for. Motion for a new trial was overruled, and the case is before us on appeal.

The jury found that the execution of the mechanics' liens by appellees upon the property involved, to secure the payment of the cost of paving the property, was obtained by fraud. This finding is not contested by appellant, and it relies only upon the paving contract as its right to recover.

Appellants' first and second propositions are to the effect that the court erred in submitting, over their objections, special issues 7 and 8 to the jury, in answer to which they found that the city council failed to act in good faith and with due

regard to the rights of the property owners in accepting the paving work, as done, because (a) there was no evidence raising such issue; and (b) the finding of the jury that the city council failed to act in good faith and with due regard to the rights of the property owners, when they accepted the paving work, as done, was not supported by the evidence, but was against the great weight and preponderance of the evidence.

The specifications for the construction of the paving contained the following:

"30 Sledged Stone Base."

"Shall consist of the local iron ore, and sandstone that outcrops in the vicinity of Planters Street and intersection of the Jasper road.

"This stone *shall be quarried by the contractor* and broken into pieces whose greatest dimensions shall not exceed 12 inches.

"This 12 inch stone shall be hauled to the site of work and placed on the prepared subgrade then sledged and broken into smaller pieces that will form a *smooth uniform course 10 inches in depth.* Voids between this larger stone *shall be filled with smaller stone* until a reasonably smooth surface free from dips, waves and excessive voids shall be secured.

"When the loose stone has been placed it shall be thoroughly rolled with a 10 ton, 3 wheel roller, until it is compacted to the satisfaction of the engineer. *After rolling, any depressions that have occurred during the rolling process shall be filled with small pieces of stone broken to suit the depth of depressions, and rerolled.*

"The engineer shall have the right to reject any rock that he thinks unsuited for the base course, *and under no circumstances must the contractor quarry or mix in with the base course any clay, soil, soapstone, marl, or other foreign substances."* (Italics ours.)

The contract provided and prescribed that the topping of the paving should be "duraco" one and one-half inches in thickness.

The consideration for Partin and his wife's agreeing that the paving should be constructed under the contract with appellants, and that paving certificates should be issued in payment of same as an obligation against them and against their property, was the grading, excavating, and paving the said streets and the construction of curbs and gutters and improving their property on the named streets, *under the terms of the contract entered into by the city and Brown & Root, the contractors, in accordance with the specifications referred to in the ordinance authorizing the paving, and made part of the contract.* The mechanics' liens executed by the Partins, and the deed of trust, were also based upon the same consideration; that is, that all and singular the paving construction, and street improvements, were to be in compliance with and controlled by the terms and specifications set forth and provided in the ordinance authorizing the paving and construction of same.

█ The jury found that Brown & Root, the contractors, failed to substantially perform their contract with the city according to the plans and specifications of the paving contract. We think the record amply supports this finding. J. O. Booker, witness for appellees, a civil engineer of 30 years' experience as an engineer and geologist on road materials and road and street construction, testified that he was able to and could tell the difference between sandstone, iron ore, clay, soil, soapstone, marl, and other substances; that he inspected the streets involved several times and found the topping on each examination cracked and broken, with depressions and low places due to the giving away of the base; that an examination of the base disclosed that it was constructed of *some* sandstone, soapstone, marl, clay, and other materials; that he found neither of the streets' base constructed wholly of sandstone or iron ore, but that clay and marl in substantial quantities were used in making the base; that the effect of using soapstone, clay, and marl for the base material is that the base will not stand up under traffic; that the defective condition of the streets, in his opinion, was due to the fact that the material used in constructing the base was too soft, too much clay and marl were used; that a *"sledged stone"* base, prepared of the materials and in the manner specified in the paving contract, should have had a base of about eight inches thick in its completed form, and that he found the base, as constructed, to be of an average thickness of only about six and a half inches, and that the average thickness of the duraco topping was from three-fourths of an inch to one and one-fourth inches; that the curbs were bad and the paving poorly constructed. He further testified that he found some sandstone in the base and where he found good sandstone

he found good paving; that in the Planters street pit where sandstone was quarried he found layers or stratas of soil, clay, and marl over the sandstone. He further testified that during the trial of the case he dug into and made further careful examination of the base materials used in the construction of the paving; that he found some sandstone, and that the percentage of sandstone used in one of the street bases would run about 50 per cent., and less in the other street; that he found no iron ore and that, in his opinion, the contract with the city was not substantially complied with; that the other 50 per cent. of the base material was a mixture of marl, clay, and soil. He further testified. that the base, as originally laid, was still intact, and the subbase had not come to the surface; that the prohibited materials—marl, clay, and soil—could be found in the Planters street quarry; and that his fear that the sandstone would not be properly quarried was one of the moving causes of his having previously advised the parties against using sandstone from that pit.

Appellee W. R. Partin testified to the effect that he watched the paving work as it progressed on the west end of Main street abutting his property; that the material used there "looked like blue soft marl"; that they would come in with a load and maybe one load would consist of soil, some rock, and it looked like they come out and scraped up the pit, taking it as they come to it; that his observation of the other street was about the same. He further testified that he wrote the city council a letter protesting the use of such materials and that he "would not pay for any such material as was going in the street"; that one or two of the city council talked to him about the matter after they got his letter, but they did not stop working; that they got rock from two or three different places; that they were out of rock and went out two or three miles to another pit where the material was yellow looking; that about the time they wound up they were getting the material from a different place. He further testified that the topping on Main street was cracked and broken and had been since ten days after it was topped; that the topping was patched even before the paving was accepted by the city, and that it had been patched at least a dozen times since; that the paving on the other street was in bad condition—the surface broken all to pieces. That while the material was being mined, in going to his

farm he passed the pit frequently, and that they took the material, dirt, clay, marl, and stone all together as they come to it.

W. F. Murray, an employee of the contractors, testified that he worked in the pits breaking up rocks, loading trucks, etc., and that he knew the difference between rock and clay; that part of the material mined and loaded was not rock; that it was clay, "kinda old yellow clay, I generally call it clay rock"; that it was soft and would break when it was picked up to load, "you would have to pick up pieces the second time when we loaded it"; that in loading the material at the pit it was not selected, but "just took it as they come to it."

R. C. Downs testified that he had lived in San Augustine 31 years; that he had occasion to observe the construction of the paving in question; that he examined the material used in the base, and that he did not consider it rock; that he went to the mayor of the city and told him that if "that was the base they would use I would refuse to pay for the pavement opposite my building"; that he sent a letter to the city council stating that the base was not in accordance with the contract and that he would not pay for the paving; that Mr. W. R. Partin, Mr. A. Murphy, and Mr. J. R. Greer joined him in the protest and put the council on notice; that a portion of the base was dug up and replaced, but that in fact he did pay for his paving.

J. R. Greer, member of the city council, testified that he was familiar with the Planters street pit from which material was taken to be used in constructing the paving; that he watched the construction of the paving on Columbia street, and that the base material used was "just this old red land clay, some rock"; that they just "went to the pit and got it just as they come to it without discrimination"; that he joined Downs and others in a letter of protest that as the paving was being constructed they would not pay for "that stuff." He further testified that he was a councilman at the time the paving was finished and accepted by the city; that the city council as a whole investigated the pavement, took grubbing hoes and dug into it; that its condition was bad, had holes in it; that they dug in several places trying to find what was the matter with it and with the base under it; that "there were lots of places that we dug holes and you could get your hand in and get stuff out and you could mash it up like biscuit dough, there was some good rock"; that that was its condition on the day it was accepted; that he voted

against accepting it, but all the others voted to accept it; that it did not take more than two or three hours to inspect the whole of the street paving, and that in his opinion a sincere effort was not made to ascertain its true condition. He further testified, as to whether the city council acted in good faith in accepting the paving: "Well, I don't think they voted like they thought, that would be my judgment; but most of the city council except Price Wood and myself, let the contract, looked over the job and accepted it in units and they felt like they could not back up after they got to the end."

The statement of facts is quite lengthy—247 pages—and without further reference thereto we will say that the evidence raises the issue as to whether the city council acted in good faith and with due regard to the rights of the property owners in accepting the paving as it was constructed, and that the verdict of the jury finding that such acceptance was not in good faith and not with due regard to the rights of the property owners is amply sustained by the evidence. The specifications under which the work was done pointedly prohibited the mixing of clay, soil, soapstone, and marl with the sandstone and iron ore to be used in laying the base, and the evidence shows that as much as 50 per cent. of the base was composed of these prohibited elements. Evidence of gross negligence is shown by the testimony of several witnesses, one of whom was a city councilman, that in quarrying and loading the material it was simply taken as they came to it without discrimination or selection. That the material was not being selected and used as required by the contract, was pointedly called to the attention of the city council while the work was being done, by several interested persons, and notice given that if the pavement was thus constructed they would not pay their assessment. And, too, the undisputed evidence is that neither the base nor the topping was of the required thickness. The fact that the contractors were permitted to use material prohibited by the specifications in the contract, after notice of its use, and the base and topping were not constructed in consonance with the specifications for them, and the paving as thus done accepted by the city council, amounted to a novation of the contract, to which the property owners were not parties, and the acceptance by the city was not binding upon the property owner, and he cannot be compelled to pay for same. Harrell v. City of Lufkin (Tex. Com. App.) 280 S. W. 174; Shambaugh v. Wilson (Tex. Civ. App.) 51 S.W.(2d) 637. To say the least, the acceptance of the paving under the facts shown operated a legal fraud upon the property owners affected, and thereby released them from liability. Rudolph S. Blome Co. v. Herd (Tex. Civ. App.) 185 S. W. 53 (writ refused).

What we have said disposes of propositions 3, 4, 5, 6, and 7.

The eighth proposition complains of certain argument of counsel for appellees in addressing the jury, and asserts that said argument was improper, out of the record, and appealed to the passions of the jury, and was highly prejudicial to the rights of the appellant. We have carefully scanned the transcript and fail to find any bill of exceptions taken to the argument, if same was made. The only reference to any portion of the record made by appellant in its brief pointing out any exception or objection to the argument is to page 59 of the transcript, which has reference to the motion for a new trial. In its motion for a new trial appellant incorporated two assignments based on the alleged improper argument as grounds for a new trial. There is no bill of exception in the record showing that such objection to the argument was made and passed upon by the court. To revise the rulings of the trial court on objections to argument, a properly preserved bill of exceptions must appear in the transcript. In the absence of such bill, there is nothing for us to consider. The allegations in a motion for a new trial cannot take the place of a bill of exceptions so as to authorize a review of such matters. 3 Tex. Jur. p. 581, § 407; p. 489, § 344; Southwestern Telegraph & Telephone Co. v. Riggs (Tex. Civ. App.) 216 S. W. 403, affirmed (Tex. Com. App.) 234 S. W. 875.

From what we have said it follows that the judgment should be affirmed, and it is so ordered.

Affirmed.