## UVALDE ROCK ASPHALT CO. v.
## FANTHAM et al.
### No. 11970.

Court of Civil Appeals of Texas.   Galveston.
April 15, 1948.

Kelley, Lockett & Lockett, of Houston, for appellant.

Robert L. Sonfield, of Houston, for appellees.

CODY, Justice.

This was an action by appellant, the paving company, on a contract for paving the streets in the subdivision owned by defendants, which was located outside of, but adjoining the city limits of Houston. At the conclusion of all the evidence, both plaintiff and defendants moved for directed verdicts. The court granted defendants' motion by withdrawing the case from the jury and rendering judgment that plaintiff take nothing.

Plaintiff alleged, among other things, that the paving improvements were completed in accordance with the terms of the contract and were accepted by defendants, as therein provided for. Defendants answered that the work was not in accord with the plans and specifications, and that the acceptances relied upon by defendants were executed by the supervising engineer through mistake and because of concealment by plaintiff of faulty workmanship. Also, that said engineer had acted so arbitrarily, capriciously and with such gross negligence in supervising the work and giving the acceptances as to amount to a fraud on defendants, and that, because of material deviations from the specifications, there was in fact a new contract, and that it was beyond the authority of said engineer to permit such deviation or to accept such work as completed.

The contract was executed on September 14, 1929 and bound the plaintiff to construct the paving improvements in a good, sound and workmanlike manner in accordance with the specifications set forth in Exhibit A attached thereto. The contract bound defendants to pay in accordance with its terms upon the completion of the work and the acceptance thereof by T. C. Edminster, engineer.

Said Exhibit A, among other things, provided that the streets should be paved with a concrete base six inches thick and it specified the mixture that should be used and that "this pavement shall be constructed in

accordance with the City of Houston's specifications". It was further provided that the work should be done under the supervision of C. T. Edminster, enigneer "with full and absolute authority to accept the completed improvements as such for the property owners and to release * * * the contractor from further obligation after such acceptance with the exception of guaranteed maintenance * * *". The guaranty so referred to was that the pavement should, for five years, remain in good serviceable condition "smooth and free from defects due to faulty materials or workmanship or any deviation from the City of Houston's specifications covering such work that may impair its usefulness as a roadway"; and that if the pavement in the judgment of the city engineer, whose judgment was made conclusive on the contractor (with an exception not here material), became defective, the contractor shall, within five days notice by the engineer, repair the defects.

The "City of Houston's specifications" in accordance with which plaintiff was bound by the contract to construct the pavements, was not attached to said contract but there was a document issued by H. L. Shaw, City Engineer, on June 12, 1929, identified upon its face as being "Form E–13" and which was designated as being "City of Houston, Texas, —Engineering Department,—Specifications,—Street Paving". This document, Form E–13, the court held, as a matter of law, was intended by the parties as being the specifications and all the specifications referred to in the contract as being "City of Houston's specifications". The specifications relative to concrete paving contained in Form E–13 required that expansion joints be installed in the concrete. Said specifications also provided against "raking" and required that the concrete be puddled, and tamped solid and further provided that the thickness of the concrete base should be not less than ninety per cent of the specified six inches.

Work under the contract was begun the latter part of 1929 and on January 28, 1930, Mr. Edminster, as supervising engineer, executed an acceptance as to the completion of the paving on certain of the streets in the subdivision; and on March 14, 1930, ex-ecuted an acceptance as to the remaining streets in the subdivision. Within less than a year after the work was so accepted, large cracks and fissures appeared in the pavement entirely through the concrete on all of the streets. Defendants notified plaintiff of such condition verbally and by letter and requested repairs. The acting Director of Public Works for the City of Houston did also. No repairs were made by plaintiff after 1932. By letter dated September 6, 1934, plaintiff notified defendants "In view of the fact that your firm has not taken care of its obligation to us, we do not feel that we are in any way obligated to make said repairs".—It was undisputed that the specified expansion joints were not installed and that the pavement was not the specified thickness of six inches nor was it of the specified minimum thickness of ninety per cent of said specified thickness (which would be 5.40 inches) but averaged the thickness of 5.24 inches.—It may be added that at the time the contract was entered into, defendants owed a part of the purchase price on the aforesaid subdivision, and that long prior to the trial, their interest was foreclosed.

The plaintiff predicates its appeal on nine points, being in substance:

Points 1–4 are to the effect: That proof of the supervising engineer's acceptance required that the court direct a verdict for plaintiff. That the evidence was insufficient to support a finding of fraud in the execution of said acceptance and was insufficient to compel a finding of fraud in the execution of said acceptances. That plaintiff's evidence of compliance with the contract at least raised a jury question.

Point 5: That the court erred in holding as a matter of law that Form E–13 'constituted the specifications and all of the specifications included in the provision that the pavement was to be constructed "in accordance with the City of Houston's specifications".

Points 6, 7: That the court erred in refusing to admit in evidence paragraph 14 of the City of Houston's engineering department Form E–10 and further erred in excluding the testimony of plaintiff's witnesses, Lee and Nolan, concerning the cus-

tom and practice of the City of Houston's engineering department with regard to the use of expansion joints.

Points 8, 9: That the court erred in overruling plaintiff's motion to strike from the evidence the aforesaid Form E–13 and defendant's evidence on the question of maintenance.

██ In passing on the court's refusal of plaintiff's motion for directed verdict we must, of course, take the evidence in the light most favorable to defendants, inclusive of all inferences favorable to defendants that can be legitimately drawn therefrom. The paving contract specified the character or quality and quantity of material and the manner or quality of the workmanship and it provided that the acceptance by Edminster, the supervising engineer, of the work as completed shall be binding on defendants. It is clear, therefore, that plaintiff made out a prima facie case against the defendants by proving up the acceptance by the supervising engineer.

██ It is well settled, however, that if such acceptances were rendered fraudulently (Herring v. City of Mexia, Tex.Civ. App., 290 S.W. 792; Uvalde Rock Asphalt Company v. Langham, Tex.Civ.App., 68 S. W.2d 646; and see Fisher v. L. E. Whitham & Co., 120 Tex. 516, 39 S.W.2d 869, 79 A.L. R. 1095), or if there was such substantial departure from the specifications in the accepted work as to create an inference of fraud (Rudolph S. Blome Co. v. Herd, Tex. Civ.App., 185 S.W. 53, writ refused; and see Fisher v. Whitman, supra), or if the acceptances were beyond the authority conferred on the supervising engineer (Harrell v. City of Lufkin, Tex.Com.App., 280 S.W. 174), then said acceptances are not binding.

From the evidence set out above, it could have been legitimately inferred that the fissures and cracks in, and the buckling of, the pavement were due to the material and to inferior workmanship. It was undisputed that no expansion joints were installed in the pavement and that the pavement was not six inches in thickness nor ninety per cent of said thickness, and the testimony of the supervising engineer with reference to the manner in which he performed his duty is unusual. He testified: That he made no

inspection to see if the expansion joints were installed or if the specified mix was being used or if the concrete was of the required thickness or if it was properly puddled and tamped or whether it was raked with shovels. Furthermore, that he did not core-drill the concrete and test the cores for strength. That he went over the job two or three days a week for an hour or two and looked it over generally. That had he known no expansion joints were installed he would not have accepted the work as completed; that he accepted it as completed "figuring that it was not exactly like it should be but possibly was good enough". It is clear that under the authorities cited above, the evidence would have supported jury findings that the acceptances were executed arbitrarily, capriciously and in fraudulent disregard of defendants' rights. So, that the court did not err in declining to direct a verdict for plaintiff.

██ This brings us to the point of whether the court erred in taking the case from the jury and rendering judgment for defendants. In other words, did the undisputed evidence compel a finding of fact that the supervising engineer acted arbitrarily in executing the acceptances; or did the undisputed evidence compel a finding of fraud in executing the acceptances? In passing on the evidence in this connection, the same must be considered in the light most favorable to plaintiff. According to his own evidence which was not disputed, Mr. Edminster, the supervising engineer, did not know if the mix was according to the City of Houston's specifications or if the concrete was being puddled and tamped in conformity thereto, or if it was being raked, or that the concrete was not six inches thick, or that it was not ninety per cent of said specified thickness, or that the expansion joints were not installed. So, in executing the acceptances, the only inference that the evidence will bear is that Edminster was not acting on his own knowledge and judgment, and so was acting arbitrarily and capriciously.

██ The installation of the expansion joints could have been omitted by plaintiff only by design. The specifications requiring that the concrete should be six inches thick, coupled with the provision that nine-

ty per cent of such thickness should be the minimum thickness, was the legal equivalent of a provision that less thickness than ninety per cent of six inches should not constitute a substantial compliance with such specifications as to thickness. Therefore, the omission of expansion joints and the failure to make the concrete base at least ninety per cent of six inches thick constituted the work done substantially a different work from that contracted for and a departure from the specifications so great as to amount to a fraud on the rights of contractee. Blome v. Herd, Supra, Tex. Civ.App., 185 S.W. at page 58.

The pavement is still in use. There was evidence, that following the paving not much traffic moved on the streets in question, and that in the past ten years, and after the subdivision was incorporated in the city limits, much more traffic moved over the pavement. There was, we believe, evidence from which it could have been inferred that traffic is good for pavement with asphalt topping, and that there has been some improvement of the pavement due to such traffic. There was also some evidence from which it could be inferred that the defects in the pavement, the cracks and fissures, were due to the character of the ground. But as indicated above, plaintiff sought to recover the full contract price, and did not invoke the doctrine of substantial performance of the contract, or of quantum meruit.

■ In Cotherman v. Oriental Oil Co., Tex.Civ.App., 272 S.W. 616, the facts were that the appellee agreed to drill for oil to the depth of 1850 feet unless oil was found in paying quantities at a lesser depth, but abandoned the hole 75 feet short of the specified depth. In the cited case the appellee pled as a defense, among other things, a substantial performance of the contract, and pled that had it drilled the well for the remaining depth of 75 feet no oil would have been recovered, and pled that if the plaintiff were entitled to recover any sum he would be entitled only to recover the amount of the reasonable cost of drilling said remaining 75 feet. Thus, one of the points before the court on appeal in the cited case was whether the defense of sub-

stantial performance would defeat recovery of appellant therein. The court held at pages 619, 620, of 272 S.W.: that substantial performance can be said to exist only where there has been no wilful departure from the terms of the contract and no omission in essential points, and the contract has been honestly and faithly performed in its material and substantial particulars, and the only variance from strict and literal performance consists of technical or unimportant omissions or details. " 'A deliberate and material departure from the terms of the contract prevents substantial performance, even though the work done may be as good or as valuable to the promisee as the work agreed to be done' (authority).

"The record discloses a deliberate departure from a material stipulation in the contract.

" 'If the contract provides in detail as to the method of performance, the court cannot apply the doctrine of substantial performance so as to ignore such express provisions' (authority)".

■ In the case at bar, it may be that plaintiff did not invoke the doctrine of substantial performance, because it did not consider it applicable. In any case, under the undisputed evidence, the contract was not honestly and faithfully performed in the particulars stated. And there was a deliberate departure, as a matter of law, from the terms of the contract with reference to the expansion joints, and with reference to specified thickness of six inches. And by contract, the deviation with reference to thickness was such as prevented a substantial compliance with the contract. Since the acceptances were not, as a matter of law, binding on defendants; and since plaintiff sought no recovery in quantum meruit, the court did not err in taking the case from the jury, and rendering judgment that plaintiff take nothing.

■ We also overrule plaintiff's point 5, complaining of the court's ruling that aforesaid "Form-E-13", issued by the Houston Engineering Department on January 12, 1929, constituted the specifications and all of the specifications with reference to the pavement which was to be construct-

ed "in accordance with the City of Houston's specifications".—It was undisputed that at the trial plaintiff admitted said document to be an official publication of the City of Houston and further admitted that said Form E-13 was what it purported to be and that it spoke for itself. And the undisputed proof showed that said Form E-13 were the specifications then in use in all paving contracts let by the City of Houston. This, even though Article IV(a) of the Charter of the City of Houston, Sect. 6, relating to specifications, advertisements, bids, and contracts for street improvements reads: "When said resolution provided for in Section 5 and 5a has been adopted, the City Engineer shall forthwith prepare and file with the City Council complete specifications for the proposed improvements, so prepared as to permit, if desired by the Council, the securing of bids for any portion of said improvements separately from the other portions, which said specifications shall be examined, and if found correct, be approved by the City Council. When said specifications have been approved the City Council shall cause advertisement to be made * * *".

The evidence would not support an inference that the City Council did not follow the engineer's specifications set forth in Form E-13 with reference to paving. The evidence was undisputed that in all instances said specifications were used. There was indeed evidence that the City of Houston also used paragraph 14 of Form E-10, which the court would not permit to be introduced in evidence and of the exclusions of which plaintiff complains in its points 6–7. But, as will appear, the provisions thereof could apply only where the City of Houston was a party to the contract.

Plaintiff's points 6, 7 complained of the court's excluding from evidence the aforesaid paragraph 14 of the City of Houston engineering department Form E-10 and of the exclusion of the testimony of plaintiff's witnesses, Lee and Nolan, concerning the custom and practice of the City of Houston engineering department with regard to the use of expansion joints.

■ It was undisputed that paragraph 14 of Form E-10 was a part of all sets of specifications drawn up by the Houston City Engineers. Said paragraph provided that the city engineer "may without notice to the sureties on a contractor's bond, make such changes in the design of material, or material or plan, or installation or construction or in the quantity or character of the work or the materials required, as he may deem advisable * * *". The purpose of that provision is, of course, obvious. It is to enable the city engineer to make changes without in any way releasing the sureties on a contractor's bond. There is no evidence that the plaintiff was required to give a performance bond under the contract sued on. But, in any event, no provision giving the city engineer authority to make changes in specifications could have any application to a contract between private individuals and to which the city is a stranger. The contract related to paving which, though it was doubtless expected would some day be brought within the city limits, was done beyond said city limits.

■ The proffered evidence of witnesses Lee and Nolan concerning the abandonment of the use of expansion joints by the city at the time in question, even though the provision covering them still appeared in the printed specifications, was properly excluded because the only basis on which said expansion joints could be eliminated was under the authority of the city engineer and of course, he had no authority in connection with the contract sued on.

■ We overrule plaintiff's points 8-9. At the conclusion of the evidence, plaintiff moved to strike defendants' evidence to the effect (1) that the job of paving did not meet specifications (2) that the roads were not properly maintained after they were built. The court also refused to admit in evidence a letter from the Acting Director of Public Works of the City of Houston to defendants, offered by plaintiff in which the opinion was expressed that the bad condition of the asphalt topping was due to lack of traffic. We need not further extend this opinion, we think, be-

652

cause our conclusions that the omission of the expansion joints, and the failure to construct the concrete ninety per cent of the specified thickness of six inches constituted structural deviations from the specifications, and require that we sustain the court's judgment for the reasons herein stated. ·

· Judgment affirmed.