## COTHERMAN v. ORIENTAL OIL CO.
### (No. 2451.)

(Court of Civil Appeals of Texas. Amarillo. April 8, 1925. Rehearing Denied May 6, 1925.)

**I. Mines and minerals** ⊚⇒78(2)—**Forfeiture clause in contract held for benefit of lessor.**

Clause in oil and gas lease providing for forfeiture, if lessee failed to comply with terms of contract as to commencement of drilling operations, or as to production of oil or gas in paying quantities, *held* for benefit of lessor.

**2. Contracts** ⊚⇒294—**When "substantial performance" exists stated.**

Substantial performance exists where there has been no willful departure from the terms of the contract, and no omission in essential points, and the contract has been honestly and faithfully performed in its material and substantial particulars, and the only variance from the strict and literal performance consists of technical or unimportant omissions or defects.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Substantial Performance.]

**3. Contracts** ⊚⇒296—**Deliberate and material departure from terms prevents substantial performance.**

Deliberate and material departure, from terms of contract prevents substantial performance, even though work done may be as good or as valuable to the promisee as the work agreed to be done.

**4. Contracts** ⊚⇒296—**Court cannot apply doctrine of substantial performance, so as to ignore express detail provisions of performance.**

Court cannot apply doctrine of substantial performance, when to do so, ignores express detail provisions of performance.

**5. Mines and minerals** ⊚⇒78(1)—**Neither prohibitive price nor difficulty of securing water with which to prosecute drilling relieved lessee from performance of stipulations to drill to certain agreed maximum depth.**

Neither prohibitive price nor difficulty of securing water with which to prosecute drilling relieved lessee from performance of stipulations to drill to certain agreed maximum depth, in the event oil was not encountered before such depth.

**6. Mines and minerals** ⊚⇒78(1)—**Lessor, whose contract with lessee required latter to drill 1,850 feet, held not required to accept unproductive hole drilled to depth of 1,775 feet.**

A lessor, whose contract with a lessee required the latter to drill 1,850 feet for oil and gas, unless the latter was encountered at a lesser depth, was not required to accept an unproductive hole drilled to a depth of 1,775 feet.

**7. Mines and minerals** ⊚⇒78(7)—**Submission to jury of lessee's defense of substantial compliance with contract to drill for oil and gas held reversible error.**

Submission to jury of lessee's defense of substantial compliance with contract to drill for oil and gas *held* reversible error.

**8. Mines and minerals** ⊚⇒78(7)—**Evidence of nonproductive conditions of tracts held not admissible to show substantial compliance with contract by lessee, or absence of damages to lessor for lessee's failure to drill to required depth.**

In action by lessor against lessee for breach of contract in failing to drill for oil and gas to a certain agreed depth, it appearing lessee drilled to depth 75 feet less than agreed depth, evidence of the nonproductive conditions of tracts adjacent to the land assigned to the lessee for drilling purposes *held* not admissible to show a substantial compliance with the contract by the lessee, or absence of damages to the lessor.

**9. Mines and minerals** ⊚⇒79(3)—**Amount payable under instrument on happening of contingency does not become absolute until that contingency happens.**

The amount payable to a lessor under an oil and gas instrument, on the happening of a contingency, that is, the existence of oil on the lease assigned to the lessee, does not become absolute until that contingency happens.

**10. Damages** ⊚⇒9—**For every breach, law conclusively presumes nominal damage.**

For every breach of a contract, the law conclusively presumes that nominal damage was suffered.

**II. Mines and minerals** ⊚⇒78(7)—**Lessor, whose lessee breached contract to drill for oil and gas, entitled to recover at least nominal damages.**

Lessor, whose lessee breached contract to drill for oil and gas is entitled to recover at least nominal damages.

**12. Mines and minerals** ⊚⇒78(7)—**Lessee's breach to drill to required depth held not to entitle lessor, as liquidated damages, to sum agreed to be paid him in oil in event of its discovery in paying quantities.**

Where lessee's liability to pay to lessor a designated sum of money in oil was dependent upon the discovery of oil in paying quantities at or before a maximum depth to which the lessee was required to drill, lessee's breach to drill to required depth *held* not to entitle lessor to such sum as liquidated damages, but to require him to prove with reasonable certainty he sustained damages in that sum as result of lessee's failure to drill to required depth.

**13. Damages** ⊚⇒22—**Party suing for breach of contract entitled to damages which are natural and proximate result of breach.**

Party suing for breach of contract is entitled to damages which are natural and proximate result of breach.

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. Mines and minerals ☞78(7)—Damages for lessee's breach to drill required depth held market value of lease, and not limited to cost of additional drilling to required maximum depth.**

Where a lessor assigned his interest in an oil and gas lease to a lessee in consideration of latter's agreement to drill for oil and gas to a certain maximum depth, and lessee's failure to drill to that depth caused a forfeiture to the lessor of the lease, damages for lessee's failure to drill to required depth *held* the market value of the lease at the time contract to drill was made, and not limited to the cost of additional drilling necessary to reach agreed maximum depth.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by G. M. Cotherman against the Oriental Oil Company. Judgment for defendant, and plaintiff appeals. Reversed, and cause remanded.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellant.

T. F. Hunter and E. E. Fischer, both of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted by G. M. Cotherman, appellant, against the Oriental Oil Company, a corporation, appellee, in the district court of Wichita county, Tex., for the recovery of damages in the sum of $9,000, with interest and costs, for the alleged breach of a written contract entered into between the parties on or about November 1, 1922.

Appellant alleges that he was the owner of the oil and gas lease described in the contract, and complied with all of the terms, obligations, and conditions imposed upon him thereby, and that defendant accepted title, entered into possession of the premises, and begun the drilling of a well under the terms of the contract. He also alleges the conditions and obligations imposed upon appellee by the terms of said contract, and that appellee agreed to drill an oil well on 10 acres of the land described to the maximum depth of 1,850 feet, unless oil or gas in paying quantities was found at a lesser depth; that appellee drilled the well to the approximate depth of 1,775 feet, abandoned all drilling operations, and failed and refused to finish and complete said well to the depth of 1,850 feet, or to oil or gas at a lesser depth, and, notwithstanding appellant's insistence and demands that it comply with the contract, appellee failed and refused to do so, and that, because of such failure, appellant was damaged in the sum of $9,000, which he was to receive in oil, if oil was discovered on said premises, and that, by virtue of the breach of the contract by appellee, appellant also lost title to the oil and gas lease, which reverted to Dee and Bellport, the original owners, as his

title was dependent upon the compliance by appellee with the drilling obligations imposed in the contract, all of which was well known to appellee.

Appellant alleges as the measure of damages the $9,000 to be paid in oil under the terms and conditions of the contract, and, in the alternative, the value of the leasehold, which he alleges to be the sum of $9,000.

The contract sued upon was attached to appellant's petition and made a part thereof, and after giving the date as October 20, 1922, identifying appellant as first party, and appellee as second party, provides that, for the consideration stated, and subject to the terms and conditions thereof, first party agrees to transfer, sell, and assign, and second party agrees to purchase and pay for the leasehold estate situated in the county of Archer, and describes the land as the west 10 acres of the north 20 acres of the north 30 acres of the East 60 acres of block 17, and the north 30 acres of the east 80 acres of the west 100 acres of said block. The other terms and provisions of said contract necessary to a determination of the issues presented read as follows:

"Second party agrees to drill a well on the 10-acre tract above described to a maximum depth of 1,850 feet, unless oil or gas in paying quantities is found at a lesser depth. In this connection it is specified that the derrick for said well shall be erected within 8 days from this date, October 28, 1922, as herein provided, and second party shall begin actual drilling of said well within 25 days from this date, 28th day of October, 1922, and shall prosecute the drilling thereof with due diligence until said well is completed as herein provided. It is further specified that by the term "paying well," as heretofore used in this paragraph, if at a depth of more than 1,500 feet, is meant a well which produced 15 barrels or more per day (24 hours), but, at a depth less than 1,500 feet any well producing as much as 5 barrels or more per 24-hour day shall be a paying well.

"It is further specified that second party shall pay all of the cost and expense of every kind and character incidental to the drilling and completing of the aforesaid well, and that said well shall be drilled with rotary tools in a good and workmanlike manner, and in accordance with the best practices and custom prevailing for the kind and character of work to be performed, and in accordance with such rules and regulations, state or federal, as may now be in force or may hereafter be lawfully promulgated.

"It is further specified that second party shall carry necessary workmen's compensation for the protection of employees engaged in the drilling of said well.

"It is further agreed that, for said assignment to the property above described, the first party herein shall be paid the sum of $225 per acre for the 40-acre lease above described, which said $225 per acre shall be paid by second party out of seven-sixteenths of the oil or gas produced from said leasehold estate, after the

second party herein has been reimbursed for the actual cost of drilling and completing said well out of the first seven-eighths of the oil or gas produced from said leasehold estate, which cost shall not in any event exceed a maximum of $3 per lineal foot for said first well. It is the intention of the parties herein that the second party shall receive the actual expense incurred in drilling and completing the first well out of the first seven-eighths of the oil or gas produced from said lease, and that such payment shall not in any event exceed $3 per lineal foot for said first well, and that, following payment to second party of such amount, first party herein shall then receive all of seven-sixteenths of the oil or gas from said leasehold estate until he has been paid a total sum of $9,000, and after such payment first party shall have no further interest in said lease or leasehold estate.

"It is further agreed that the first party shall deliver to second party with this contract in escrow with Security National Bank of Wichita Falls, Tex., a valid and bona fide assignment of the leasehold estate above described, to be delivered by said escrow holder to second party upon the completion by second party of a paying oil well as herein described.

"It is further specified that second party shall comply with each and all of the terms and provisions of the original lease contract on said property above described, and, particularly, shall pay to the fee owner the sum of $250 per year for each well, where gas only is found and used or sold off of the premises above described, such payment to be made in advance to the fee owner. It is understood that this is one of the provisions of said original lease contract with which second party agrees to comply. * * *

"It is understood and agreed that the consideration moving to first party herein is securing a producing well on some portion of the lease above described; and in event of second party's failure to commence drilling, or to secure such a producing or paying well as herein provided, then all of the rights acquired hereunder by second party shall revert to first party, who, in such event, shall own and hold the title to said lease and leasehold estate."

Appellee answered by general demurrer, special exceptions, general denial, admitted the execution of the contract, and specially pleaded that plaintiff never at any time owned or held title to the oil and gas lease described in the contract, never paid any consideration therefor, but held the leasehold estate under and by virtue of a contract with the owners, the terms and conditions of which are similar to the one between appellant and appellee, which appellant failed to perform, and could not therefore complain of the failure of appellee to comply with its contract; that, at the time appellee entered into the contract with appellant, it intended in good faith to drill said well to a depth of 1,850 feet, or to oil in paying quantities at a lesser depth, but, on account of a drought, was unable to procure, at other than prohibitive prices, water necessary to be used in drilling the well; that both appellant and

appellee were limited by time, and for lack of time, under the terms of their respective contracts, appellee was unable to procure water necessary to drill the additional 75 feet, and it was impossible for it to have complied, to the letter, within the time allowed; that said leasehold estate was situated in dry territory, and that by drilling the well to the depth it did, and by the drilling of wells by others on adjacent and adjoining tracts of land, it had demonstrated to a moral certainty that no oil would have been produced by drilling the additional 75 feet, and therefore appellant suffered no damage; that, at the time appellee abandoned the well, it was below the depth at which oil was produced in that territory, and the formation was such that indicated no oil-producing strata would be encountered if the well had been drilled the additional 75 feet.

Appellee also pleaded that the contract vested only a contingent interest in it, and stipulated for a forfeiture with a liquidating damage intent in providing that, in the event it failed to commence drilling or to secure a producing or paying well, all the rights under said contract should revert to appellant, under which either party could declare a forfeiture, and it having ceased drilling at the depth of 1,775 feet, appellant declared a forfeiture of the contract and estopped himself to seek damages for the failure of appellee to perform.

Appellee also pleaded that it substantially complied with the terms of the contract, and thoroughly tested said oil and gas lease by drilling a sufficient depth to demonstrate that the lease would not produce oil in paying quantities, as provided in the contract, and performed said contract sufficiently to satisfy the intent thereof.

Appellee also pleaded in the alternative that, if appellant was entitled to recover, the measure of his damages would be the reasonable cost of drilling the well the additional 75 feet, which could have been done if there had been water and other things accessible for the sum of $300.

Appellee also pleaded that, if it was liable in any sum, and the cost of drilling the well the additional 75 feet was not the correct measure of damages, the market value of the 40 acres described in said contract was at no time more than $25 per acre, and that said oil payment sued on was never worth on the market more than $300 in cash, and, at the time of the breach, could not have been sold for more than $300 on the market, and, if appellant was entitled to recover, he would not be entitled to more than the value of the leasehold and oil payment at the time of the breach.

The case was submitted on special issues, in response to which the jury found: (1) That the appellee substantially performed its contract with appellant; (2) that appellee abandoned the well in question on or be-

fore the 5th day of March, 1923; (3) that the reasonable cash market value of the 40-acre lease at the time of the sale by appellant to appellee was $2,000; (4) that the reasonable cash market value of the 40-acre lease at the time the defendant ceased drilling was $1,200.

Appellant, by proper assignments, challenges the action of the trial court for various alleged erroneous rulings; but it is admitted by both appellant and appellee in their respective briefs that the main and controlling issues presented to this court for review are:

(1) Does appellee's defense, based on a substantial compliance by it with the contract under the admissible evidence revealed by the record, defeat appellant's cause of action?

(2) If not, what is appellant's measure of damages for the breach of the contract by appellee?

In disposing of the case, we will consider the questions in the above order.

In the contract for the breach of which suit is brought, appellee agrees to drill a well "to a maximum depth of 1,850 feet, unless oil and gas in paying quantities is found at a lesser depth," and "prosecute the drilling thereof with due diligence until said well is completed as herein provided"; that, for the leasehold estate assigned, appellant "shall be paid the sum of $225 per acre for the 40 acres * * * out of seven-sixteenths of the oil or gas produced from said leasehold estate" * * * after appellee "had been reimbursed for the actual cost of drilling and completing said well out of the first seven-sixteenths of the oil or gas produced from said leasehold estate, which cost shall not in any event exceed $3 per lineal foot for said first well," and, after appellee is so reimbursed, appellant "shall then receive all of seven-sixteenths of the oil or gas * * * until he has been paid a total sum of $9,000," and, after such payment, he shall have no further interest in the property.

There is no contention here that appellee was induced to sign the contract by fraud, accident, or mistake, or that for any reason it is not bound by its terms, and the stipulations of the contract in unambiguous and unmistakable language impose upon appellee the obligation of drilling a well to the depth of 1,850 feet, unless oil or gas in paying quantities, as defined in the contract, is found at a lesser depth.

Mr. Freeman, appellee's superintendent of production, testified that drilling was stopped because there was no water available for that purpose; that the 1,850-foot depth did not amount to anything; that the hole was plugged, according to the report to the Railroad Commission, January 7, 1923, which date he thought was correct; that a surface casing was left in the hole, and that 24

hours after the hole was plugged the rig was moved off; that the driller had not finished the job when the rig was moved off, but the well was shut down on account of the lack of water; that it was decided not to drill to the depth of 1,850 feet on March 5, 1923, on which a wire was received from appellant, in which it was claimed that appellee had forfeited the contract, and in which appellant asserted a claim for damages for $9,000; that up to that time it was intended to go back and drill on to a depth of 2,000 feet; that, but for water trouble, the well should have been drilled in 16 days; that, if water could have been had at the time the casing was pulled, the additional 75 feet could have been drilled at a cost of not exceeding $100.

It is admitted that drilling was discontinued at a depth of 1,775 feet, and the jury found that the well was abandoned by appellee before March 5, 1923, the date at which appellant sent appellee the wire above mentioned.

[1] It is apparently settled that the forfeiture clause in the contract was for the benefit of appellant. Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 191, and authorities cited. But, in any event, appellee's contention that it did not abandon drilling until notified by appellant that, because of the breach by appellee, the contract was canceled, is eliminated by the finding of the jury that appellee had abandoned drilling before the sending of the telegram by appellant, and its receipt by appellee. Schulz v. Tessman et al., 92 Tex. 488, 49 S. W. 1031; Waterman Lumber & Supply Co. v. Holmes (Tex. Civ. App.) 161 S. W. 70.

[2-6] Neither the prohibitive price of nor the difficulty of securing water with which to prosecute drilling could relieve appellee from the performance of the stipulations in its voluntary contract. Northern Irrigation Co. v. Watkins (Tex. Civ. App.) 183 S. W. 431.

"Substantial performance is said to exist 'where there has been no willful departure from the terms of the contract, and no omission in essential points, and it has been honestly and faithfully performed in its material and substantial particulars,' and the only variance from the strict and literal performance consists of 'technical or unimportant omissions or defects.'" Page on Contracts, vol. 5, par. 2780, and authorities cited.

"A deliberate and material departure from the terms of the contract prevents substantial performance, even though the work done may be as good or as valuable to the promisee as the work agreed to be done." Page on Contracts, vol. 5, par. 2781, and authorities cited.

The record discloses a deliberate departure from a material stipulation in the contract.

"If the contract provides in detail as to

the method of performance, the court cannot apply the doctrine of substantial performance so as to ignore such express provisions." Page on Contracts, vol. 5, par. 2783.

The contract between appellant and appellee provides for the method of performance; stipulates, not only for a test of the leasehold estate for oil and gas and the manner in which the test shall be made, but expressly prescribes to what extent the method stipulated as a test shall be applied. Appellant contracted for and paid for a certain test—a certain article—a hole in the ground 1,850 feet in depth, unless oil or gas was found at a lesser depth, and he cannot be required to accept a different test—a different article—a hole in the ground 1,775 feet in depth.

In the case of Fessman v. Barnes (Tex. Civ. App.) 108 S. W. 170, it is held that, if a contractor binds himself to drill a hole in the ground to the depth of 650 feet or obtain water in an amount satisfactory to the owner at a lesser depth, and the contractor voluntarily abandoned the contract without any fault of the owner, the contractor could not recover. "It was, under the terms of such a contract, absolutely necessary that a hole 650 feet be drilled, or water sufficient to satisfy appellant should be obtained, and a failure to comply with the conditions would prevent a recovery, unless performance was prevented by appellant."

In Connor v. Trapp et al., 127 Iowa, 742, 104 N. W. 333, the court says:

"The appellants either contracted for a 4-inch well, or they did not. If they contracted for such a well, they were entitled to it, and a 3-inch one did not constitute a substantial compliance with the contract, within the meaning of the law." Fauble & Smith v. Davis, 48 Iowa, 462; Jackson v. Creswell, 94 Iowa, 713, 61 N. W. 383; Anderson v. Todd, 8 N. D. 158, 77 N. W. 599.

A contract to bore a well is not substantially performed if the diameter contracted for is not adhered to. 1 Beach on Modern Law of Contracts, §§ 293, 294; Gillespie Tool Co. v. Wilson, 123 Pa. 19, 16 A. 36.

In Turner v. Hartsell, 4 Ala. App. 607, 58 So. 950, it is held that if a contractor, under an agreement to drill a well until he found water or receive no pay for his work, abandoned the work before finding water in appreciable quantities, he could not recover on his contract. See, also, Id., 196 Ala. 299, 71 So. 658.

In Empire Gas & Fuel Co. v. Couch (Tex. Civ. App.) 226 S. W. 1104, it is said:

"The written contract in the case stipulates that the appellee should dig the well 'to a depth of 3,500 feet, unless the second party or his authorized agent instructs the first party to discontinue drilling at a lesser depth.' Suing as the appellee has upon the contract, for the contract price for 2,960 feet dug thereunder, it devolved upon him, in order to recover there-for, to justify the failure to complete the digging of the well to the specified depth by establishing the facts alleged by him that the appellant, by its authorized agent, instructed the appellee to cease drilling operations, and did by its authorized representative assume complete charge and control of the well so dug by the appellee."

In Ellison Furniture & Carpet Co. v. Langever, 52 Tex. Civ. App. 50, 113 S. W. 178, 135 S. W. 1059, it is said:

"If the parties to the contract specifically stipulated that the border should contain 296 lights, the courts would have no power to set aside such stipulation; but the appellee would be bound by it, even though a less number of lights might be more desirable, either from the standpoint of beauty or utility. Any other rule would put it beyond the power of the parties to contract as they please, and would require the appellant to accept and pay for something it had never bargained for. The doctrine of substantial compliance has no application under the facts of this case. If appellant contracted for a specific number of lights in the border of his sign, appellee has not complied by placing therein a less number."

In Cochran v. Pew et al., 159 Pa. 184, 28 A. 219, the defense was urged:

That it had been " 'ascertained, by methods practiced and approved by men skilled in the business, that neither carbon oil nor gas existed in the land leased'; * * * that it must now be accepted as a demonstration of science that putting down a well on land shown by exploration of neighboring territory to be dry is a useless expense and damage. * * * But the conclusive answer in the present case is that the parties have clearly stipulated for the mode in which the trial shall be made, and it is to be by a well on this land. There is no room for science, any more than there is for a jury, to say that it will be of no use to do it. The parties have explicitly agreed on the exact thing to be done, and the exact amount to be paid for failure to do it. The scientific nature of mining in the present day, and the certainty of scientific conclusions from exploration of neighboring territory, may be fully recognized and admitted, but, nevertheless hopeful parties may desire an actual test; and, if we are to take notice of facts in the history of oil mining, we know that some of the most extraordinary and profitable productions have been the result of 'wildcatting' in unpromising fields. But it is enough for us that the parties have contracted for the thing to be done, and the damages for not doing it. Under such circumstances, it is never open to the covenantor to say that the thing would be of no value to the covenantee if it were done."

In Henry Oil Co. v. Head (Tex. Civ. App.) 163 S. W. 311, it is said:

"Appellant will not be heard to say that appellee would have derived no benefit from a completion of its contract, for that is no concern of its. Letot v. Edens, 49 S. W. 109; Chapman v. Clements (Ky.) 56 S. W. 646; Gayton v. Day, 178 Fed. 249, 101 C. C. A. 609. Appellant received from appellee property of

the value of $3,700, for which it undertook to do a specific thing, which it has failed to do. The least that can be expected of it is that it should return the consideration received."

In Covington Oil & Gas Co. et al. v. Jones (Tex. Civ. App.) 244 S. W. 287, it is said:

"It was immaterial whether the well completed to a depth of 2,000 feet might have been a dry hole or an oil gusher, and a matter about which appellants could not justify their refusal to complete."

In Texas Pacific Coal & Oil Co. v. Barker et al. (Tex. Civ. App.) 252 S. W. 809, the court says:

"Appellant must be held to be bound by its contract, and it is in no position now to say that it had decided for itself that the tract was dry, because it has wholly failed to perform except as to drilling one well."

[7] We are of the opinion that the defense of substantial compliance relied upon by appellee cannot be sustained, and it was error to submit such issue to the jury.

[8] If we are correct in the foregoing conclusion, then appellee breached its contract, and, in view of the authorities above cited, it would not be permitted to show that appellant had not been injured by the breach; therefore the testimony of various witnesses, admitted by the court over appellant's objection, that in their opinion, based on the productive or nonproductive conditions of tracts of land adjacent to the 40 acres assigned by appellant to appellee, for the purpose of showing that the 40 acres was probably nonproductive, for which reason appellant had suffered no damage, was, under the record in this case, not admissible, either to show a substantial compliance, or that appellant was not injured. We are not to be understood as holding that the testimony of expert witnesses, based on the conditions of surrounding tracts, would not in any case be pertinent.

[9] This brings us to a consideration of the question of appellant's measure of damages. The contract stipulates that, in addition to drilling the well, appellant shall be paid $9,000 by appellee "out of seven-sixteenths of the oil or gas produced from the leasehold estate," and "that the consideration moving to appellant is securing a producing well on some portion of the lease."

Interpreted in the light of the express terms of the written agreement and the surrounding circumstances, it was evidently not the intention of the parties that the $9,000 constituted an absolute obligation, payable in all events; therefore it was not a present debt, nor an unconditional promise to pay, but an obligation dependent on the discovery by appellee of oil in sufficient quantities, as defined by the contract, to pay appellant—the discovery of oil was a contingency which might or might not happen—

and the drilling of the well to the depth of 1,850 feet could not make certain the existence of oil on the lease, the contingency upon which the $9,000 debt became a present debt and an absolute obligation to pay.

We are cognizant of the principle that would require appellee, if it owed appellant an absolute obligation which it promised to pay in oil, but failed to do so, to make payment in money; but appellee did not owe appellant $9,000, unless oil was discovered in paying quantities on the lease at or before the depth of 1,850 feet. Therefore it was not a present debt, but an obligation to become absolute only, on a contingency, the existence of oil; therefore appellant could not recover the $9,000 stipulated in the contract, without evidence in addition to the contract showing he was damaged in that sum, unless the breach—the failure to drill 1,850 feet—changed a promise to pay, dependent upon a contingency, the existence of oil, into an absolute promise to pay in money. This we do not conceive to be the law. Harris v. Wheeler et al. (Tex. Com. App.) 267 S. W. 465; Ferguson v. Mansfield (Tex. Sup.) 263 S. W. 900, and authorities cited.

[10-13] To construe the provision for the payment of the $9,000 in oil as an absolute obligation to pay that sum in money, if appellee breached his contract, would be giving to such provision the effect of a stipulation for liquidated damages without the parties so contracting. This we cannot do, and consequently appellant, to recover said sum, must prove by competent testimony that $9,000 is the damage he sustained.

For every breach of a contract, the law conclusively presumes that nominal damage was suffered, and the appellee having breached its contract in this case, the appellant was entitled to recover nominal damages. In a suit to recover on the breach of a contract, only such damages can be awarded as are the natural and proximate result of the breach. In Fraser et al. v. Echo Mining & Smelting Co., 9 Tex. Civ. App. 210, 28 S. W. 714, the court quotes with approval this language:

"The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount."

This principle is again announced in an opinion by Judge Bishop of the Commission of Appeals and approved by the Supreme Court in the case of National Bank of Cleburne et al. v. M. M. Pittman Roller Mill, 265 S. W. 1024, and fortified by the citation of numerous authorities. See, also, Payne v. Mt. Franklin Fuel & Feed Co. (Tex.

Civ. App.) 234 S. W. 595; South Chester Tube Co. v. Texhoma Oil & Refining Co. (Tex. Civ. App.) 264 S. W. 108.

There is a distinction between the certainty of the proof required to show that the damage is the direct result of the breach, and the certainty of the proof required to show the extent or measure of the damages. Courts are more liberal in accepting testimony of an uncertain and speculative nature on the measure of damages than they are in considering such testimony sufficient to show that the damage is the result of the breach.

The testimony in the record tends to show that the well to be drilled was on what oil men consider virgin territory; that the formation in which oil was found was not regular; that wells had been drilled in and around this well at distances varying from one-fourth of a mile to 6 miles; that the nearest dry hole was 1 mile away, and the nearest producing well was approximately one-fourth of a mile from the well in controversy; that producers had been obtained in the surrounding territory at different depths; that dry holes had been the result of drilling in some instances, and producers found at approximately the same depth in reasonably close proximity to the dry holes. A majority of the witnesses, permitted to testify as experts, gave it as their opinion that oil would not have been reached in paying quantities at the depth of 1,850 feet, but each witness admitted that his opinion was only conjecture based on his knowledge and information of the experiments made by drilling the wells above mentioned.

In the case of Hetzel v. Baltimore & Ohio R. Co., 169 U. S. 38, 18 S. Ct. 259, 42 L. Ed. 652, Justice Harlan of the Supreme Court of the United States says:

"The plaintiff is not bound to show to a certainty that excludes the possibility of doubt that the loss to him resulted from the action of the defendant in violating his agreement. In many cases such proof cannot be given, and yet there might be reasonable certainty founded upon inferences, legitimately and properly deducible from the evidence, that the plaintiff's loss was not only in fact occasioned by the defendant's violation of his covenant, but that such loss was the natural and proximate result of such violation. Certainty to reasonable intent is necessary, and the meaning of that language is that the loss or damage must be so far removed from speculation or doubt as to create in the minds of intelligent and reasonable men the belief that it was most likely to follow from the breach of the contract, and was a probable and direct result thereof. Such a result would be regarded as having been within the contemplation of the parties and as being the natural accompaniment and the proximate result of the violation of the contract. * * * The proof may sometimes be rather difficult upon the question whether the damage was the just and proximate result of the breach of the covenant. In such case it does not come with very good grace from the defendant to insist upon the most specific and certain proof as to the cause and amount of the damage when he has himself been guilty of a most inexcusable violation of the covenants which were inserted for the very purpose of preventing the result which has come about."

In order to recover the $9,000 which was to be paid in oil, appellant must make it appear, with such certainty as would satisfy the minds of reasonable men, that he lost that sum as the result of appellee's failure to drill to the depth of 1,850 feet, and to do this the probative force of the testimony should be such as to eliminate from the field of mere conjecture, the existence of oil at that depth, and while appellee, on account of the breach of the contract, is not in a position to demand the most exact and satisfying proof, his breach, in our opinion, would not relieve appellant from producing testimony that would enable the minds of intelligent men to reach a conclusion founded on facts rather than surmise.

In the condition this case is presented by the record, the $9,000 to be paid in oil, should oil be discovered in paying quantities at or before drilling to the depth of 1,850 feet, does not constitute appellant's measure of damages.

[14] The testimony in the record shows that appellant assigned his interest in the contract and the 40-acre lease to appellee, and that the drilling of the well according to the agreement was the part of the consideration to be paid unconditionally. The testimony tends to show that, on account of appellee's breach of the contract, the appellant lost the lease; consequently appellee cannot limit appellant's recovery to the cost of drilling the well the additional depth from 1,775 feet to 1,850 feet, but the measure of appellant's damages is the market value of the lease at the time the contract to drill was made. Henry Oil Co. v. Head (Tex. Civ. App.) 163 S. W. 311, and authorities cited; Sanzenbacher v. Howard Clay Oil Co. et al. (C. C. A.) 283 F. 13; Covington Oil Co. v. Jones (Tex. Civ. App.) 244 S. W. 287; Thornton on Oil and Gas (4th Ed.) vol. 1, p. 931.

The judgment is reversed, and the cause remanded.