**SHASTA OIL CO. et al. v. HALLIBURTON OIL WELL CEMENTING CO.***
(No. 3006.)

Court of Civil Appeals of Texas. Amarillo.
March 21, 1928.

Rehearing Denied April 11, 1928.

Bonner, Bonner & Fryer, of Wichita Falls, for appellants.

Ben F. Saye, of Duncan, Okl., and Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted in the district court of Wichita county, Tex., by the appellants, the Shasta Oil Company, Apple-Brandeberry Oil Company, Standard Pipe & Supply Company, corporations, F. O. Grebin, and J. Beren, against the appellee, Halliburton Oil Well Cementing Company, to recover damages in the sum of $50,000, alleged to have been sustained by appellants on account of the negligence of appellee in failing to properly cement an oil well for appellants.

The appellants alleged that they owned the leasehold estate on the west 80 acres of land in block 39 of the G. P. Meade subdivision out of the Wm. Pobert survey in Archer county, Tex., on which they had several wells, each producing on an average of 47½ barrels of oil per day, and each of which had been satisfactorily cemented for appellants by appellee; that in Archer county, in the vicinity where said 80 acres of land was situated, it was necessary and customary to cement wells and that appellee claimed an exclusive patent to the process of cementing oil wells commonly used in said county, and by reason of the ownership of such patent appellee claimed that the use of the same process by any other party would be and consti-

tute an infringement of its patent rights; that prior to July 1, 1926, appellants drilled Well No. 2 Meade A on said 80 acres of land, to a depth of approximately 1,435 feet, and found therein the same valuable oil sand found in their other wells on said tract of land, and from which the other wells were producing oil; that appellee was employed to cement said Well No. 2 Meade A, the purpose of which was to shut out water and other injurious substances and prevent injury to and destruction of the oil sands in the well from which oil was produced.

The appellants sufficiently described the manner and method of cementing wells by the appellee, the details of which we deem it unnecessary to state, and alleged that appellee failed to use ordinary care in cementing said well, and it was guilty of negligence in the following particulars: That appellee failed to have and use a correct steel line to record the depth to which the cement plugs should be forced down; that it failed to correctly read the steel line and recording gauge to ascertain the depth to which the cement had been forced down; that it failed to cut off the pressure and permit the cement to set at the bottom of the casing, where it properly belonged, after knowing that the cement had been forced through the bottom of the casing; that it continued to apply the pressure in such a way that it forced the cement high above the bottom of the casing, where it set above the water-bearing sands, and permitted the water to run into and injure the oil-bearing sands; that it used its pumps at a high and dangerous pressure, and forced the cement contained in the mud and water in the well down and out into the oil-bearing sands, and thereby permanently injured said sands.

Appellants allege that about a week after the defective work of appellee was performed, appellants complained to it thereof and advised it that the work had been negligently done, which appellee admitted, and stated that no charge would be made for such defective work, and that appellee would correct such defective work by again cementing the well, which it attempted to do, but on account of the condition of the well, which was the proximate result of the negligence of the appellee in its first attempt to cement the well, the second effort was wholly ineffectual, and the services of the appellee were worthless and without any value whatever to appellants; that after appellee's second effort to cement the well had resulted in a failure, appellants were forced, in an effort to repair the damage done by the negligence of appellee, to expend certain items, the aggregate of which they allege to be $4,720.62; that in addition to such items, they were charged $500 by appellee for the work it had done and which was worthless; that the reasonable cost of a new well, at the same point, would be $5,000, and it would be of no more value than the well now is, in its present condition, because the sands for probably 200 feet around the well are damaged by the water, mud, and cement, as above alleged; that after the expenditure of the $4,720.62, which was necessary, appellants were able to produce, from said well, oil in quantities of about 15 barrels per day flush production, but had the well been properly cemented and the water excluded from the oil-bearing sands, it would have had a flush production of at least 47½ barrels per day, which was the production of the other wells of appellants in both directions near this one; that the market value of producing leases is largely determined by the productivity of each well thereon, and the reasonable market value of a well is $1,200 ber barrel for each day's production, and a well producing 47½ barrels per day is of the reasonable cash market value of $57,000, and the reasonable cash market value of a well producing but 15 barrels per day is $18,000, and that appellants, by the negligence of appellee, which was the proximate cause of their injuries, are damaged in the sum of $39,000, in addition to the items above alleged.

The appellee answered by general demurrer, special exceptions, and general denial, and pleaded, by way of cross-action, that it was doing business in the state of Texas, under a permit duly issued; that in connection with its business, at the request of appellants, it did the cement work on the well mentioned at an agreed consideration of $550, which was the usual and customary charge, all of which the appellants knew, by reason of which the appellants are indebted to it in the sum of $550, all of which is past due and none of which has been paid, and prayed for judgment for said amount, etc.

By supplemental petition, the appellants demurred and pleaded general denial, and that they were not due appellee any sum whatever, because it wholly failed to comply with the contract to cement the well, and the services performed were worthless and of no value, but, on the contrary, caused appellants great damage.

During the trial, the appellants filed, with the permission of the court, a trial amendment, alleging that the reasonable cost of drilling another well, after salvaging such material as could be saved from said No. 2 Meade A Well, would be the sum of $8,000.

In response to special issues submitted by the court, the jury found that the appellee was not negligent in failing to have and use a correct steel line to record the depth to which the cement had been forced down; was not negligent in failing to observe said steel line and recording gauge to ascertain the depth to which the cement had been forced down; was not negligent, after knowing that the cement had been forced out of the bottom of the casing, in failing to cut off the

pressure and permit the cement to set outside near and around the bottom of the casing; was not negligent in forcing the cement through the bottom of the casing of the well and continuing to apply the pressure in such a way as to force the cement high above the bottom of the casing allowing it to set above the water-bearing sands, so as to permit the water to run from such sands into the oil-bearing sands below; and that it was not negligent in using its pumps in such a way as to cause an unnecessarily and unusually high and damaging pressure to be placed on the oil sands, and damaging said sands as the result thereof; that appellee was guilty of no negligence that was the proximate cause of appellants' damages; that the reasonable value of the well, after the salt water was shut off, was $6,750.

On a special issue requested by appellee and given by the court, the jury found that the damage sustained by the appellants was the result of an unavoidable accident.

At the request of the appellee, the court peremptorily instructed the jury to find for appellee against the appellants, the sum of $550 on its cross-action, and in obedience thereto the jury so found.

On these answers, the court rendered judgment that appellants take nothing by reason of their suit against the appellee, and that the appellee have and recover from the Shasta Oil Company the sum of $550, together with interest thereon after the date of the judgment at the rate of 6 per cent. per annum, and that the appellants be taxed with the costs, from which judgment the appellants prosecute this appeal.

■ The appellants challenge as error the action of the trial court in excluding, on the motion of appellee, the testimony of the witness Clifford Mooers as to the difference in the value of the well as completed, in its damaged condition, and the value which it would have had, had it been completed in the ordinary and usual way, because such difference was the true measure of their damages, and because the testimony of the witness was also admissible on the measure of damages submitted by the court, which was the reasonable cost of drilling another well. In view of the findings of the jury that appellee was not guilty of any of the negligent acts alleged by the appellants, this ruling of the court is immaterial, because, before appellants could recover, having based their cause of action on the negligence of appellee, it was necessary for them to secure a finding of the jury that appellee had been negligent in some of the particulars alleged.

■ The witness Mooers testified, in substance, that salt water is injurious to oil-bearing sand, as it will drive the oil back into the sand and may shut it off, so that it never comes back as it originally would; that he could not estimate how far the pressure from salt water would extend into the oil sand, and that he did not believe any practical geologist around there could say, as it depended entirely upon the conditions of the sand, its porosity, its hardness, and many things, and that he was not of sufficient experience to give an intelligent answer on that question. He also testified that it was not usual or customary in that country to estimate the market value of a well by the number of barrels of oil it produced in a day, but the value of a lease on which the well was located was frequently determined by the number of barrels of oil that were produced on the lease per day. No testimony was offered as to what distance from the well the oil-bearing sands were affected by salt water, nor the decrease in production of this well, on account of salt water. Hence it is our opinion that the court was correct in holding that appellants' measure of damages would be the cost of another well, less the net value of the salvage that could be secured from the well drilled. American Glycerin Co. v. Kenridge Oil Co. (Tex. Civ. App.) 295 S. W. 633; Cotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616, and authorities cited.

The appellants assail as error the action of the trial court in peremptorily instructing the jury, at the request of appellee, to return a verdict for appellee on its cross-action, for the sum of $550, against the appellants.

The appellants pleaded that the appellee represented itself to be especially qualified and prepared with its machinery, process, and peculiar knowledge, and with thoroughly trained and highly experienced men, to be able to satisfactorily cement a well so as to protect it from the effects of salt water and other injurious substances, etc., and that it placed, on said work for appellants, wholly incompetent, inexperienced, careless, and negligent employés, and that the work done in cementing the well was worthless and without value.

The testimony shows that after the first effort to cement the well, appellee was advised that the job was a failure, and it promised to send another party to cement the well properly; that the second effort to cement the well was a failure; that during the controversy over the cementing of the well, appellants wrote appellee in detail about the damages they had suffered because the cement work was not done in a workmanlike manner. In reply to this letter, appellee, among other things, writes in effect that it is the policy of the company to render satisfactory service, by furnishing the best labor available and the best equipment that ingenuity and its engineers can design; that it does not make a practice of paying for delays for its equipment being unable to reach a location in the time required, but it credited appellants' account some time back with $100, and in this particular case did make a refund of $100 on the cement job.

The appellee contends that this letter had reference to another and different job, but there is no testimony in the record that identifies such credit or such refund with any other job for appellants, and in the absence of any explanation, the reasonable construction of the statement in this letter is that such credit had been made on the price charged for the services performed on the well in controversy.

The testimony also tends to show that the work done by appellee on the well was without value and worthless.

This is a sufficient statement from the record to disclose that it was error to direct the jury to find a verdict for the appellee on its cross-action in the sum of $550. However, appellee contends that if the court committed error in giving such instruction, it does not require a reversal of the case on the other issues passed upon by the jury.

"Where one represents himself as a workman, he impliedly covenants that he will perform skillfully the work on which he is engaged, and if, because of a lack of skill, his work is without value, he is not entitled to a recovery for his labor." 28 R. C. L. p. 707, par. 45. "In an action for work and labor, it is a good defense that the work was done so badly as to be of no value or benefit to the person for whom it was done." 40 Cyc. p. 2836, par. C. This doctrine is approved in the case of Davidson v. Edgar, 5 Tex. 492, in which the court says:

"There is, however, in all cases when work is contracted to be done, an implied obligation that it shall be so executed as to answer the object designed. And if it had been in proof, that it entirely failed in what it was designed for, the jury ought to have found a verdict for the defendant."

In Waul v. Hardie, 17 Tex. page 553, the Supreme Court holds that a party who contracts to do work is bound to do it in a workmanlike manner, and if the work done is worthless on account of failure to exercise proper skill, such party is not entitled to recover for his work.

It is our opinion that the court committed such error, in directing the jury to find for the appellee on its cross-action, as requires a reversal of the entire case, because the jury might have construed such peremptory instruction as a suggestion from the court that, in his opinion, the evidence was not sufficient to establish the negligence of appellee.

"It is incumbent upon trial judges to exercise the greatest care in preventing the jury from ascertaining the views of the court upon the credibility of the witnesses or the weight he gives to their testimony." Lamar v. P. & S. F. Ry. Co. (Tex. Com. App.) 248 S. W. page 34. "It appears reasonably doubtful, at least, as to whether or not the Company was prejudiced by the giving of this erroneous charge. Therefore the case should be reversed." Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425.

Appellants' assignment urging as error the action of the court in submitting to the jury whether or not the damages sustained were the result of an accident is, in our opinion, not tenable, but, if error, it was immaterial in view of the findings of the jury.

Appellants' other assignments presenting error relative to statements by the court in the presence of the jury, and the sending into the jury room, at the jury's request, a transcription of the testimony of a witness, need not be discussed, because it is improbable that they will occur on another trial.

The judgment is reversed, and the cause remanded.