**CRAWFORD–STRAUSS PROPERTIES, INC., Appellant,**

**v.**

**Robert DOOLITTLE and Richard Ragsdale d/b/a Rio Landscaping and Sprinkler Company, Appellee.**

**No. 15447.**

Court of Civil Appeals of Texas, San Antonio.

Jan. 14, 1976.

Rehearing Denied July 30, 1976.

Cox, Smith, Smith, Hale & Guenther, Inc., P. Keith O'Gorman, San Antonio, Hewett, Johnson, Swanson & Barbee, Dallas, for appellant.

Fred R. Granberry, San Antonio, for appellee.

CADENA, Justice.

Defendant, Crawford-Strauss Properties, Inc., appeals from a judgment, based on a jury verdict, awarding plaintiffs, Robert Doolittle and Richard Ragsdale, d/b/a Rio Landscaping & Sprinkler Company, $5,470.50 as compensation for work done, and materials furnished, by plaintiffs under a contract for installation by them of a sprinkler system at an apartment complex under construction in San Antonio. Such construction was under the supervision of defendant as general contractor.

On July 4, 1973, plaintiffs submitted to defendant a proposal for the installation of a sprinkler system at the apartment complex. Defendant accepted the proposal and plaintiffs began installation of the system with the understanding that a written contract would be executed incorporating plaintiffs' proposal. The contract was signed by defendant on July 30, 1973, after it had been signed by plaintiffs. The record does not disclose the date of execution of the instrument by plaintiffs.

On July 31, 1973, plaintiffs submitted their first "draw sheet," requesting payment for work done by them up to that time. A check for the amount shown on

the draw sheet ($5,470.50) was delivered to plaintiffs, but, after an inspection of the work, defendant ordered payment on the check stopped. Plaintiffs have not completed the installation of the sprinkler system; and by this suit they seek recovery of the sum of $5,470.50 as payment for the work done by them prior to July 31, 1973.

The contract price for the installation of the complete sprinkler system was $18,235.00.

The sprinkler system was to be an automatically operated system consisting of approximately 835 "commercial grade Rainbird brass high-pop pop-up sprinkler heads." The contract recited that the exact number of sprinkler heads to be installed would be "determined by adequate coverage, considering topography and landscape planting." The contract required the installation of 30 "commercial grade Buckner electric automatically operated sprinkler control valves"; approximately 10 "Toro pop-up rotary heads"; and 3 "Rainbird 10-station automatic controllers." All workmanship and materials were required to conform with the plumbing and building codes of the City of San Antonio, and plaintiffs agreed to install anti-backflow devices "as required." Plaintiffs guaranteed "100% coverage of the lawn areas below the finished grade." The contract required that the sprinkler heads be so positioned as to avoid spraying water on the buildings.

The contract specified that no alterations were to be made in the "[w]ork as shown or described by the Contract Documents except on the written order of" defendant.

The jury found that the work actually done by plaintiffs under the contract was done in a good and workmanlike manner and that the work actually done substantially complied with the contract. The jury further found that it would require no additional expense "to place the portion of the sprinkler system actually completed by Plaintiffs in compliance with the contract."

Plaintiffs' pleadings did not seek recovery on a theory of quantum meruit.

The following facts are undisputed:

(1) Plaintiffs did not install an anti-backflow device, although the plumbing code of the city required at least one such device. Operation of the sprinkler system without meeting this requirement would be unlawful and would subject the user to a fine not exceeding $200.00 each time the system was used.

(2) Plaintiffs installed Toro valves instead of the Buckner valves called for in the contract.

(3) Plaintiffs installed a Buckner controller rather than the Rainbird 10-station automatic controller required by the contract.

Clearly, the work actually performed by plaintiffs does not constitute full compliance with the terms of the contract. In order to recover, they must invoke the equitable doctrine of substantial performance. "Substantial performance" has been defined in Texas as follows:[1]

> To constitute substantial compliance the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them. Such performance permits only such omissions or deviation from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing.

At the time that defendant stopped payment on the check, one of defendant's vice-presidents told plaintiffs that the sprinkler system did not give 100% coverage; that there was a defective valve; and that some of the sprinkler heads were Toro vinyl heads rather than the Rainbird heads called for by the contract. There is uncontradict-

1. *Atkinson v. Jackson Bros.,* 270 S.W. 848, 851 (Tex.Com.App.1925).

ed testimony to the effect that plaintiffs repaired the defective valve and replaced the Toro sprinkler heads with Rainbird heads. The testimony concerning the coverage afforded by the system is conflicting, and the jury obviously resolved this conflict in favor of plaintiffs.

We thus must consider the effect of plaintiffs' conduct in failing to install the anti-backflow device, in installing a Buckner controller rather than the Rainbird controller specified in the contract, and in installing Toro valves rather than Buckner valves.

One of the plaintiffs at first explained the absence of the anti-backflow device by stating that the installation of such a device was not required by the plumbing code of the City of San Antonio. When confronted with a provision of the plumbing code requiring the installation of such a device, he took the position that defendant insisted that the connection of the sprinkler system to the city water mains be done by defendant's plumber, and that it was the duty of such plumber to install the anti-backflow device. The evidence establishes that the plumber who made the connection to the city water main was paid by plaintiffs. It was plaintiffs' duty under the contract to make such connection, it is clearly plaintiffs' obligation under the contract to install, or cause to be installed, required anti-backflow devices. This obligation was not performed.

■ The testimony is sufficient to support a finding that the valves and controller actually installed by plaintiffs were at least equal in quality and performance to those called for by the contract. The portion of the sprinkler system actually installed was, according to plaintiffs' testimony which the jury accepted as true, sufficient to accomplish the purpose for which the contract was executed. That is, except for the absence of the anti-backflow device, the deviations are not so pervasive as to frustrate the purpose of the contract in any real or substantial sense. Defendant's testimony establishes that the absent backflow pre-

vention device can be installed for about $715.00.

The evidence, while conflicting, is sufficient to support a finding of substantial compliance.

■ However, we agree with defendant that the jury's answer to the effect that no additional expenditures would be required in order to bring the work into literal compliance with the terms of the contract cannot stand.

■ Even if the finding of substantial performance finds support in the evidence, the rule is that the amount recoverable by the defaulting contractor is determined by deducting from the contract price the reasonable cost of remedying the defects in the tendered performance. *Atkinson v. Jackson Bros., supra; Loggins v. Gates,* 301 S.W.2d 525 (Tex.Civ.App., Waco 1957, writ ref'd n.r.e.). The evidence is clear that some expense would be incurred in remedying the defects. An examination of the testimony reveals that the cost of such remedial work is not established as a matter of law. The testimony of defendant's expert cannot be accepted as true, since the remedial work which he described departs from the provisions of the contract and, in any event, he did not testify that his cost estimates represented the reasonable cost of such remedial work.

Since the jury finding is contrary to the overwhelming weight and preponderance of the evidence, and since the cost of the remedial work required is not established as a matter of law, we must remand the cause for a new trial. As was pointed out in *Atkinson,* the burden was on plaintiffs to establish "the deductions allowable necessary to remedy the defects and omissions." 270 S.W. at 851.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

### ON MOTION FOR REHEARING

In its motion for rehearing, appellant insists that there can be no finding of substantial performance where the contractor

intentionally departs from the agreed specifications.

There are numerous statements to the effect that where the contractor is guilty of a "willful" breach he can maintain no action for compensation. See *Cotherman v. Oriental Oil Co.,* 272 S.W. 616, 619–20 (Tex. Civ.App., Amarillo 1925, no writ).

The courts have made little or no effort to define the term "wilful," Terms such as "wilful," "deliberate," "intentional," and "fraudulent" are merely epithets characterizing the quality of the conduct of one guilty of a breach and expressing the mental attitude of the court. In refusing compensation to a *wrongdoer,* his conduct may properly be described by resorting to epithets, but the fact that it may be so described does not automatically decide the case and make it unnecessary to weigh and give effect to other factors. 5A Corbin on Contracts § 1124, p. 11 (1964).

The *Cotherman* opinion is not overly persuasive as a precedent in the application of the doctrine of substantial performance. The opinion's rationale cannot be interpreted as other than a repudiation, in effect, of the doctrine. For example, the Amarillo Court quoted from an Iowa case which stated: 'The appellants either contracted for a 4-inch well, or they did not. If they contracted for such a well, they were entitled to it, and a 3-inch one did not constitute a substantial compliance with the contract, . . . .' The other authorities cited all speak in terms which would require literal compliance with all terms of the contract.

It is significant, too, that in *Cotherman* the contractor completely abandoned the project and made no effort whatever to complete the contract.

*Ellison Furniture & Carpet Co. v. Langever,* 52 Tex.Civ.App. 50, 113 S.W. 178, 135 S.W. 1059 (Tex.Civ.App., Fort Worth 1908, no writ), is also urged as dispositive of the case before us. There, the contract called for the construction of an electric advertising sign containing 296 light bulbs along the border. The sign constructed by plaintiff contained only 263 lights along the border. In denying recovery to plaintiff, the Court said (113 S.W. at 179):

> If the parties to the contract specifically stipulated that the border should contain 296 lights, the courts would have no power to set aside such stipulation; but the . . . [plaintiff] would be bound by it, even though a less number of lights might be more desirable, either from the standpoint of beauty or utility. Any other rule would put it beyond the power of the parties to contract as they please, and would require . . . [defendant] to accept and pay for something it had never bargained for. . . . If . . . [defendant] contracted for a specific number of lights in the border of his sign, . . . [plaintiff] had not complied by placing therein a less number.

This insistence on literal compliance is, again, wholly inconsistent with the equitable doctrine of specific performance. In both *Cotherman* and *Langever* there is an absence of consideration for the factors generally considered by a court which is seeking to determine whether less than literal compliance with the terms of a contract necessarily deprives the contractor of the right to any compensation. Nothing is said of the purpose to be served by the contract, the excuse for deviation from the letter, the desire to be gratified, and the inequity of requiring complete adherence. It is only after considering such factors that a court can make a determination as to whether literal fulfillment of the terms is to be required.

In *Harrell v. City of Lufkin,* 280 S.W. 174 (Tex.Com.App.1926), denial of recovery on the doctrine of substantial performance was based on three factors. (1) The essential basis for recovery under the doctrine of specific performance was not embodied in the pleadings. (2) There was no prayer for recovery on that theory. (3) The jury found that there had been no substantial performance. The Court did say (280 S.W. at 176–77):

> [T]here is absence of 'substantial performance,' since the changes were intentionally made and 'structural' in their

nature. Intentional material changes preclude existence of at least two of the primal elements of 'substantial performance.' . . . The jury's finding, in view of conflicting testimony as to comparative merit of the pavement contracted for originally and that finally laid, removes the third element of 'practically equivalent quality and value.'

■ In *Harrell,* in addition to an intentional deviation, we had a case involving deviations which were "material" and a performance which was not of "practically equivalent quality and value." Here, unlike the situation in *Harrell,* the jury's finding does not remove all the elements of the doctrine. The verdict here, at least, establishes that the changes were not material and that the tendered performance was of "practically equivalent quality and value."

The opinion of the Commission of Appeals in *Harrell* was not adopted by the Supreme Court. Only the "judgment recommended" was adopted. The judgment recommended can be supported on the fact that the tendered performance was not the equivalent of that for which the owner contracted, and on the fact that the jury also found that the changes were material. Therefore, the Supreme Court's adoption of the judgment does not imply an approval of the language concerning the effect of "intentional" deviation.

Accepting the jury verdict in this case, we do not have before us a situation where a contractor attempted to substitute inferior and less expensive materials. Are we to brand as "willful" deviation the conduct of the contractor who, in order to speed up performance, uses different material from that specified, more conveniently at hand and in fact equally good?

Here, after payment on the check was stopped, the contractor corrected the deviations which had been called to his attention. The defective valves were repaired and the non-complying sprinkler heads were replaced. When appellant still withheld payment, according to the undisputed testimony, including the testimony of one of appellant's witnesses, the contractor sought, on several occasions to ascertain the reason for nonpayment, so that he might make the necessary corrections. Appellant did not respond to these inquiries. We have here, then a contractor who made every effort to determine the cause of the owner's dissatisfaction and who was willing to make whatever changes were necessary to bring his performance into literal compliance with the contract. It would be grossly inequitable to classify such a contractor as a person guilty of "intentional and deliberate" wrongdoing and deprive him completely of his labor and materials, and to bestow on the unresponsive owner a benefit which must be classified as "unjust" enrichment.

The motion for rehearing is overruled